KENTUCKY CONTAINER SERVICE,
INC., Appellant,

v.

Kenneth ASHBROOK, Hon. Richard M.
Joiner, Administrative Law Judge, and
Workers' Compensation Board, Appel-
lees.

No. 2007–SC–000533–WC.

Supreme Court of Kentucky.

Aug. 21, 2008.

Rehearing Denied Oct. 23, 2008.

Derek Patrick O'Bryan, Sheffer Law
Firm LLC, Louisville, KY, Counsel for
Appellant, Kentucky Container Service,
Inc.

James Delano Howes, Howes & Paige,
PLLC, Louisville, KY, Counsel for Appel-
lee, Kenneth Ashbrook.

**OPINION OF THE COURT**

An Administrative Law Judge (ALJ)
found the claimant's application for bene-
fits to be timely because the electronic
document that the employer's insurance
carrier filed to inform the Office of Work-
ers' Claims that it had terminated tempo-
rary total disability (TTD) benefits failed
to comply strictly with KRS 342.040(1) and
803 KAR 25:170, § 2(2). As a conse-
quence, the Office failed to advise the
claimant that he must file an application
within two years after the employer termi-
nated TTD. A divided Workers' Compen-
sation Board affirmed and the Court of
Appeals affirmed the Board.

Appealing, the employer argues that it
did comply strictly with the notice require-
ment and that the statute of limitations
barred the claim. In the alternative, the
employer argues that the equities favored
dismissing the claim despite the deficient
notice that it terminated TTD. We affirm.
The ALJ determined reasonably that the
employer failed to comply strictly with
KRS 342.040(1) and 803 KAR 25:170,
§ 2(2). The claimant did nothing to im-
pede its ability to do so and, furthermore,
the record reveals no evidence of other
extraordinary circumstances that would
have required a decision in the employer's
favor.

The claimant sustained a work-related right shoulder injury on April 15, 1998. He underwent surgery and received temporary total disability (TTD) benefits from April 16, 1998, through September 17, 1998. On November 3, 1998, he filed a *pro-se* medical fee dispute in which he sought payment for a cardiac evaluation that he underwent prior to the surgery. An Arbitrator determined that he failed to prove a relationship between the procedure and the shoulder injury and dismissed the dispute.

The claimant sustained a left shoulder injury and a left knee injury, in September and November of 2002 respectively. He filed a claim for the injuries with the assistance of counsel, on June 14, 2004. During the pendency of the claim, on March 9, 2005, he filed an application for benefits for the 1998 right shoulder injury as well as for an injury due to physical therapy performed for the 2002 left shoulder injury.

The employer raised a limitations defense regarding the 1998 injury, asserting that more than two years had passed since it terminated TTD benefits and that it filed the necessary electronic document with the Office of Workers' Claims (formerly the Department of Workers' Claims) after terminating TTD benefits. The claimant testified that he did not recall receiving a letter advising him of the need to file a claim within two years after TTD was terminated. He stated that he first learned that he had only two years to file a claim during a conversation with the attorney who represented him concerning the 2002 injuries.

KRS 342.038 requires workers' compensation carriers to submit various reports to the Office. Debra Wingate, the Office's Division Director for Information and Research testified that one of the required reports is a Subsequent Report of Injury or Form IA–2, which informs the Office that a carrier has terminated voluntary TTD benefits. If correctly submitted, the report causes the Office to generate and mail a WC–3 letter, which advises the affected worker of the statute of limitations.

803 KAR 25:170, § 2 has required carriers to use a data collection agent or value added network designated by the Office to file Form IA–2 reports electronically since January 1, 1996.[1] Wingate explained that when implementing electronic filing, the Office required those who wished to transmit electronic data to complete a profile and participate in a training process to assure that they could successfully transmit electronic information to the Office and receive it from the Office. The Office permitted only those who completed the process successfully to submit electronic data.

Wingate testified that electronic data submission requires the use of specific maintenance codes to convey information under standards set by the International Association of Industrial Accident Boards and Commissions (IAIABC). The codes are contained in the Association's electronic data interchange manual, and an Event Table found on the Office's website specifies the codes to be used in Kentucky. Wingate's testimony did not make clear the extent to which the Office informed trading partners of the Event Table. Attached to her deposition was a portion of the IAIABC manual, which defines the relevant maintenance codes as follows:

*FN = Final:* Closed claim, no further payments of any kind anticipated.

1. 803 KAR 25:170, § 1 explains that a data collection agent is a business that keys information in electronic format and transmits it to a value added network. A value added network accepts electronic transmissions and sorts them for delivery to various addresses.

**Process:** An IP or FS Subsequent report must have previously been filed, and a previous periodic subsequent report may or may not have been filed.

. . . .

*S1 = Suspension, returned to work, or medically determined/qualified to return to work:* All payments of indemnity benefits have stopped because the employee has returned to work or has been medically determined qualified to return to work.

According to Wingate, the Event Table states that the S1 code will cause the Office to generate and send the WC–3 letter but that the FN code will not do so. She explained that the FN code was meaningless to the Office but that it was not an "improper" code that the Office would question. She thought that some trading partners used it for internal purposes. She acknowledged that the electronic filing system's use of codes caused a number of problems initially for the Office, insurance carriers, and trading partners.

Kathy New testified that she was manager of the claims department for Midwestern Insurance Alliance, the claims service for the employer's insurance carrier. She stated that the FN code referred to "notice of final TTD payment" and that Midwestern did not receive an Event Table from the Office in 1998 or 1999. Shown a letter that the Office sent in 1998 to inform carriers and their trading partners to use the S1 code, she noted that the list of recipients did not include the employer's insurance carrier, Midwestern, or the data collection agent/value added network that actually submitted electronic data to the Office. She stated that a December 2, 1999, letter from Ms. Wingate identified a number of claims that lacked a return to work date or a Form IA–2 but that the present claim was not among them. According to New, Midwestern's

data collection agent transmitted the IA–2 in the present claim on December 29, 1999. It contained an FN maintenance code. Although she stated that the Office first notified Midwestern in 2000 or 2001 that only an S1 code would result in a WC–3 letter, no evidence indicated that she resubmitted a Form IA–2 that contained the S1 code.

The ALJ found the claim for the 1998 injury to be timely under *Billy Baker Painting v. Barry,* 179 S.W.3d 860 (Ky. 2005). The ALJ reasoned that Midwestern submitted a defective Form IA–2 that failed to cause the Office to send a WC–3 letter. Thus, the failure to comply strictly tolled the statute of limitations, regardless of whether it resulted from bad faith or misconduct.

KRS 342.040(1) and KRS 342.185(1) operate in tandem. KRS 342.185(1) requires an application for benefits to be filed within two years after a work-related accident or within two years after the employer terminates income benefits, whichever occurs last. KRS 342.040(1) and the regulations place certain obligations on employers and the Office of Workers' Claims. Their goal is to prevent individuals who receive voluntary income benefits from developing a false sense of security and failing to file a timely claim. KRS 342.040(1) requires an employer to notify the Office when it terminates TTD or fails to pay TTD to a worker who has missed more than seven days of work due to a work-related injury. It requires the Office, when so notified, to advise the worker in writing of the right to file a claim and of the applicable period of limitations.

KRS 342.990 provides civil and criminal penalties for an employer's failure to comply with KRS 342.040(1), but Chapter 342 provides no remedy for the affected worker. Thus, the courts have turned to equitable principles when the circumstances

warranted and estopped employers who failed to comply strictly with KRS 342.040(1) from asserting a limitations defense, even in the absence of bad faith or misconduct.[2]

Contrary to the employer's assertion, *Billy Baker Painting v. Barry, supra,* stands for the principle that an employer must bear the burden of its failure to comply strictly with KRS 342.040(1) and 803 KAR 25:170, § 2(2). Providing required information in an incorrect format is no less a failure of compliance than failing to provide required information. An exception to the principle of strict compliance is *Newberg v. Hudson,* 838 S.W.2d 384 (Ky.1992), in which the court found the circumstances not to warrant an equitable remedy because the worker engaged in conduct that caused the employer to fail to comply with KRS 342.040(1).[3]

KRS 342.260(1) charges the Office's Executive Director with promulgating regulations necessary to effectuate the purposes of Chapter 342. 803 KAR 25:170, § 2(2) specifies the manner in which Midwestern was required to provide notice under KRS 342.040(1). It states in pertinent part as follows:

> Beginning with work-related injuries and occupational diseases reported to employers on or after January 1, 1996, each insurance company ... shall file the information required on the Form IA-2 with a data collection agent or a value added network designated by the Office of Workers' Claims, in electronic format, every sixty (60) days for as long as the disability of an employee continues and whenever payments to an employee are commenced, terminated, changed or resumed.

As the party raising a limitations defense, the employer had the burden of proof. The evidence indicates that it did not comply strictly with KRS 342.040(1) and 803 KAR 25:170, § 2(2). First, its carrier transmitted the Form IA-2 to the Office on December 29, 1999, which was more than a year after it terminated benefits. Second, the report contained the incorrect FN maintenance code. And, third, the carrier failed to submit a corrected report after being notified specifically in 2000 or 2001 that only the S1 code signified the termination of TTD. As a consequence, the Office lacked the information necessary for it to comply with its obligation under KRS 342.040(1) to send a WC-3 letter. Unlike the situation in *Newberg v. Hudson, supra,* the claimant did nothing to impede the employer's ability to comply with KRS 342.040(1) or the regulation.

The evidence revealed no other extraordinary circumstances that required a decision in the employer's favor. Challenging

**2.** *Billy Baker Painting v. Barry, supra,* (employer failed to include TTD termination date on Subsequent Report of Injury, so the Department failed to send WC-3 letter); *Lizdo v. Gentec Equipment,* 74 S.W.3d 703 (Ky.2002), (employer failed to prove that it notified the Department or that the Department notified the worker); *H.E. Neumann Co. v. Lee,* 975 S.W.2d 917 (Ky.1998) (employer's failure to pay TTD or notify the Department tolled the statute of limitations without regard to bad faith); *Colt Management Co. v. Carter,* 907 S.W.2d 169 (Ky.App.1995) (lack of misconduct is immaterial where the employer failed to notify the Department that it terminated TTD); and *Ingersoll-Rand Co. v. Whittaker,* 883 S.W.2d 514 (Ky.App.1994) (failure to notify the Department precluded a limitations defense regardless of who was responsible); *City of Frankfort v. Rogers,* 765 S.W.2d 579 (Ky.App.1988) (an employer may not manufacture a limitations defense by failing to comply with KRS 342.040(1)).

**3.** *J & V Coal Co. v. Hall,* 62 S.W.3d 392 (Ky.2001), is inapplicable in the present circumstances. It concerned a worker who was not entitled to TTD or to a WC-3 letter.

a carrier's refusal to pay medical expenses and knowing that a statute limits the period for filing a claim are different matters. No evidence refuted the claimant's testimony that he learned of the statute of limitations in a conversation with the attorney who represented him in the 2002 claims. Nothing indicated precisely when he received that information or that he delayed unreasonably to file a claim after receiving it.

The decision of the Court of Appeals is affirmed.

MINTON, C.J., and ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER, and SCOTT, JJ., concur. VENTERS, J., not sitting.