BILLY BAKER PAINTING Appellant,

v.

Daniel BARRY, Hon. Bonnie C. Kittinger, Administrative Law Judge; and Workers' Compensation Board Appellees.

No. 2005–SC–0029–WC.

Supreme Court of Kentucky.

Sept. 22, 2005.

Rehearing Denied Jan. 19, 2006.

Douglas A. U'Sellis, U'Sellis & Kitchen, PSC, Louisville, Counsel for Appellant.

Christopher P. Evensen, Tamara Cotton & Associates, Louisville, Counsel for Appellee.

## OPINION OF THE COURT

The defendant-employer failed to include a "payment adjustment end date," when notifying the Department of Workers' Claims that it was terminating voluntary temporary total disability (TTD) benefits due to the claimant's return to work. For that reason, the Department did not notify the claimant of his right to file an application for benefits and of the applicable period of limitations. An Administrative Law Judge (ALJ) determined subsequently that the employer failed to comply adequately with KRS 342.040(1); therefore, the period of limitations was tolled when the claimant filed his application. The employer maintains that it complied with KRS 342.040(1), that it was unnecessary for the claimant to be informed of the date when benefits were terminated, and that it was the Department that failed to comply with KRS 342.040(1). We affirm.

The claimant was born in 1951 and has an eleventh-grade education. In 1995, he began working for the defendant-employer as a painter. On July 19, 1997, he injured his right knee while working. He underwent arthroscopic surgery on the knee in September, 1997, and was released to return to work in November of that year. The employer paid TTD benefits through November 16, 1997, when the claimant returned to his usual work. He testified subsequently that he continued to have problems with his knee and that the employer terminated him in April, 2001, without giving a reason. Although his knee worsened thereafter, he did not seek medical treatment until sometime in 2002. He stated that his subsequent employer laid him off on November 21, 2002. He had not worked since then because he continued to have problems with his knee. Also, his symptoms had worsened.

The claimant filed an application for benefits on December 17, 2002. Moving to dismiss the claim, the employer asserted that it had properly filed an electronic Form IA–2 in which it notified the Department that TTD benefits were last paid on November 16, 1997; therefore, the claim was barred by limitations. The claimant responded that he did not receive a Termination of Benefits (WC–3) letter from the Department. Attached to the pleading was a January 15, 2003, affidavit by Larry Greathouse, the Department's commissioner. It certified that on November 21, 1997, the Department received an electronic Subsequent Report of Injury (IA–2) regarding the claimant's knee injury. It also certified that the Department's database did not reveal the filing of an IA–2 that reflected the Adjustment End Date; therefore, the Department had not generated a WC–3 letter. On that basis, the ALJ overruled the motion to dismiss but later granted a motion to bifurcate the limitations issue.

The employer introduced depositions from two Department employees. In May, 2003, Joe Peters, the Supervisor in the Agreements Section at the Department, testified that his section was responsible for processing letters to workers regarding the statute of limitations. He stated that the Department's electronic data system produced letters based on information that employers submitted. Addressing the present claim, he explained that the Department received an electronic First Report of Injury (IA–1); a Subsequent Report of Injury (IA–2), which indicated that the employer initiated TTD payments; and a second IA–2, which indicated that the claimant returned to work on November 16, 1997, and that the employer suspended or terminated payments. He ex-

plained that, normally, an IA–2 regarding the suspension or termination of benefits would have triggered a letter, notifying the claimant of the date that benefits were terminated and of the applicable period of limitations. In this case, the system produced a letter, but the termination date could not be verified. This occurred because the employer's second IA–2 did not include the mandatory payment adjustment end date, i.e., the date of the last TTD payment. Peters explained that the Department's policy at that time was not to mail a letter in which the date of the last TTD payment could not be verified. The policy was later revised.

As an exhibit to Mr. Peters' deposition, the claimant introduced a copy of a November 14, 2000, letter from Walter W. Turner, a former commissioner of the Department. The letter involved a similar situation in another claim. It addressed the Department's policy of discarding WC–3 letters that were produced from data that did not contain a payment adjustment end date and, therefore, did not contain a termination date. In the letter, Mr. Turner characterized the date as being a mandatory field in an employer's notification that benefits have been suspended or terminated. He stated that as of March 3, 1998, no system was in place to notify an employer that data was missing from an IA–2 filing or that a WC–3 letter would not be sent to the injured worker. He explained that the rationale for discarding letters that were produced from data that did not include a payment adjustment end date was that such letters did not correctly state the date of the last voluntary payment from which the two-year period of limitations would run. He stated that, in his opinion, a better policy would have been to reject the deficient IA–2 or to inform the employer that a letter regarding the statute of limitations would not be sent to the worker.

Deborah Wingate, Director of the Department's Information and Research Division, was deposed on July 14, 2003. Her description of the Department's policy in 1997 verified those of Messrs. Peters and Turner. She stated that, to her knowledge, the Department did not reject incomplete filings in 1997. Nor did it notify the employer, carrier, or adjuster who made the filing that a WC–3 letter would not be sent. She testified that the policy was changed in 1998, after which the Department attempted to identify cases in which no WC–3 letter had been mailed under the previous policy and to inform employers. Nonetheless, she continued to maintain that the reason no WC–3 letter was mailed in the pre–1998 cases, such as the claimant's, was the employer's failure to include the payment adjustment end date, a date considered to be mandatory when reporting a termination of benefits.

When deposed on July 14, 2003, Ms. Mary Margaret Sutherland, Claims Manager at Ladegast & Heffner Claims Service, testified that the claimant was paid TTD benefits from July 29, 1997, through November 16, 1997. Ladegast & Heffner then filed an electronic IA–2 report. She verified that although the filing contained a return to work date of November 16, 1997, it contained nothing in the field for the payment adjustment end date. Nonetheless, Ladegast & Heffner received an acknowledgement from the Department that the filing was accepted on November 21, 1997. At no time was it informed that the filing was deficient or that the deficiency would prevent a WC–3 letter from being mailed. Her understanding was that Department procedure changed subsequently so that the Department mailed WC–3 letters upon receipt of IA–2 which indicated that payment was suspended or terminated, regardless of whether it included the payment adjustment end date.

Although she conceded that the adjustment end date was mandatory when reporting a termination of benefits in 1997 and although she conceded that Ladegast & Heffner failed to report an end date on the IA–2 it filed regarding the claimant's termination of benefits, she would not agree that the filing was deficient.

Ms. Sutherland testified that in December, 1999, she received a letter from Ms. Wingate. It contained a list of claims for lost time injuries that did not reflect a return to work date or a subsequent report from the carrier. She stated that the list did not include the claimant's name. It appears from the transcript, however, that she was not asked whether the Department also sent a list of claims that failed to reflect a payment adjustment end date or if she requested such a list.

The ALJ determined from the evidence that the employer's failure to include a payment adjustment end date when filing the second Form IA–2 was the reason that the claimant did not receive the letter to which he was entitled. Although acknowledging that it was unfortunate that the letter was not mailed and that the carrier was not informed of its error or of its effect, the ALJ pointed out that an injured worker is not required to bear the consequence of a mistake that is in no way his fault. *Ingersoll–Rand Co. v. Whittaker*, 883 S.W.2d 514 (Ky.App.1994). Concluding that the period of limitations was tolled regarding the claimant's injury, the ALJ ordered the claim to proceed.

The employer continues to maintain that it complied with KRS 342.040(1) by informing the Department of the date that the claimant returned to work and of the fact that benefits were terminated. It asserts that any failure to comply with KRS 342.040(1) resulted from the Department's decision not to mail WC–3 letters in which the date that benefits were terminated

could not be verified. Furthermore, it argues that workers know the date when their benefits cease and are capable of calculating the date when their claims expire.

At the time of the claimant's injury, KRS 342.185 provided, in pertinent part, as follows:

(1) Except as provided in subsection (2) of this section, no proceeding under this chapter for compensation for an injury or death shall be maintained unless ... an application for adjustment of claim for compensation with respect to the injury shall have been made with the department within two (2) years after the date of the accident .... *If payments of income benefits have been made, the filing of an application for adjustment of claim with the department within the period shall not be required, but shall become requisite within two (2) years following the suspension of payments or within two (2) years of the date of the accident, whichever is later.* (emphasis added).

KRS 342.040 provided, in pertinent part:

(1) Except as provided in KRS 342.020, no income benefits shall be payable for the first seven (7) days of disability unless disability continues for a period of more than two (2) weeks, in which case income benefits shall be allowed from the first day of disability. All income benefits shall be payable on the regular payday of the employer, commencing with the first regular payday after seven (7) days after the injury .... In no event shall income benefits be instituted later than the fifteenth day after the employer has knowledge of the disability or death. Income benefits shall be due and payable not less often than semimonthly. *If the employer's insurance carrier or other party responsible for the payment of workers' compensation*

*benefits should terminate or fail to make payments when due, that party shall notify the commissioner of the termination or failure to make payments* and the commissioner shall, in writing, advise the employee or known dependent of right to prosecute a claim under this chapter. (emphasis added).

As adopted effective December 7, 1995, 803 KAR 25:170, § 2(2) provided, in pertinent part:

Beginning with work-related injuries and occupational diseases reported to employers on or after January 1, 1996, each insurance company writing workers' compensation insurance policies in the Commonwealth of Kentucky, each group of self-insurers holding a valid certificate issued by the commissioner (or its third-party administrator), and each individual employer carrying its own risk and holding a valid certificate issued by the commissioner *shall file the information required on the Form IA–2* with a data collection agent or a value added network designated by the Department of Workers' Claims, in electronic format, every sixty (60) days for as long as the disability of an employee continues and *whenever payments to an employee are commenced, terminated, changed, or resumed.* (emphasis added).

It has long been recognized by the courts that KRS 342.185(1) operates in tandem with KRS 342.040(1) to prevent an injured worker from being lulled into a false sense of security by the payment of voluntary benefits and failing to file a timely claim. *J & V Coal Co. v. Hall,* 62 S.W.3d 392, 395 (Ky.2001). Absent extraordinary circumstances such as were present in *Newberg v. Hudson,* 838 S.W.2d 384, 389 (Ky.1992), an employer's failure to comply strictly with KRS 342.040(1) and the applicable regulations has tolled the period of limitations, without regard to whether the failure is attributable to bad faith or misconduct. *See H.E. Neumann v. Lee,* 975 S.W.2d 917 (Ky.1998); *Colt Management v. Carter,* 907 S.W.2d 169 (Ky.App.1995); *Ingersoll–Rand Co. v. Whittaker, supra.* As the party raising a limitations defense, the burden was on the employer to prove that such circumstances existed.

Reading the statutes and regulation in concert, it is apparent that KRS 342.185(1) runs the period of limitations for two years after the last payment of voluntary income benefits. KRS 342.040(1) requires an employer to inform the Department that voluntary benefits have been terminated and then requires the Department to notify the injured worker of the right to prosecute a claim. 803 KAR 25:170, § 2 specifies that employers must notify the Department of a suspension or termination of benefits by filing a Form IA–2. Furthermore, it is undisputed that the payment adjustment end date (*i.e.,* the date that benefits were terminated) is a mandatory field when completing an IA–2 to report a suspension or termination of benefits. As implied in former Commissioner Turner's letter, the date that an individual is released to return to work or the date that he does so is not necessarily the date when benefits were terminated. The regulation and Form IA–2 help to effectuate the purpose of KRS 342.185(1) and KRS 342.040(1) by requiring an employer to specify the date that voluntary benefits were suspended or terminated.

In the present case, Ladegast & Heffner filed a Form IA–2 on the employer's behalf, informing the Department that it had terminated benefits and that the claimant returned to work on November 16, 1997, but it failed to include the date that benefits were terminated. For that reason, the Department did not mail a WC–3 letter, and the claimant did not receive one. Al-

though the carrier continues to assert that the IA–2 it filed was not deficient, the fact remains that the form did not include a date that it concedes was mandatory. Although it is unfortunate that the carrier was not informed of the omission on its IA–2 and given an opportunity to rectify the matter, we are not convinced that the ALJ erred by concluding that the equities favored the claimant.

The decision of the Court of Appeals is affirmed.

All concur.