HITACHI AUTOMOTIVE PRODUCTS USA, INC., Appellant,

v.

Chester R. CRAIG, Jr.; Honorable James L. Kerr, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2007–SC–000631–WC.

Supreme Court of Kentucky.

Oct. 23, 2008.

Rehearing Denied April 23, 2009.

Timothy J. Walker, Ferreri & Fogle, Lexington, KY, Counsel for Appellant, Hitachi Automotive Products USA, Inc.

Thomas G. Polites, Wilson, Polites & McQueen, Lexington, KY, Counsel for Appellee, Chester R. Craig, Jr.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) dismissed the claimant's application for benefits having found that he received the letter required by KRS 342.040(1) but failed to file an application for benefits within two years after the employer terminated voluntary income benefits. The decision implicitly rejected the claimant's arguments that conduct by the employer's insurance carrier violated KRS 342.267 and 803 KAR 25:240, that the violations reasonably induced a tardy filing, and that they estopped the employer from asserting a limitations defense. Although the Workers' Compensation Board affirmed, the Court of Appeals reversed. Appealing, the employer asserts that estoppel is an inappropriate remedy for unfair claims settlement practices, that the facts do not warrant an estoppel, and that the Court of Appeals misinterpreted 803 KAR 25:240 and engaged in impermissible fact-finding.

We affirm. KRS 342.267 penalizes an employer who commits unfair claims settlement practices but offers no remedy to the affected worker. The evidence before the ALJ compelled findings that the carrier violated KRS 342.267 and 803 KAR 25:240 and that the violations reasonably

induced a tardy filing. Equity required an estoppel.

The claimant has an eighth-grade education and a GED. He began working for the defendant-employer in 1994. He strained his back while working as a fireman in May or June 2002 and filed a claim, but the injury resolved with minimal treatment. He then sustained a non-work-related back injury for which he underwent surgery in 2002 and missed four weeks' work.

The work-related back injury that is the subject of this appeal occurred on April 8, 2003, while the claimant helped to lift a heavy pallet. He continued to work until September 2003, when he underwent surgery to the same area of his back as in 2002. His employer paid temporary total disability (TTD) and medical benefits voluntarily but terminated TTD when he returned to work on January 12, 2004, and notified the Office of Workers' Claims. The employer terminated medical benefits two years later on January 12, 2006, after which the insurance adjuster informed the claimant that the statute of limitations had expired. Although the claimant obtained counsel and filed an application for benefits in February 2006, the employer asserted that the statute of limitations barred the claim because more than two years had passed since it terminated TTD. As a consequence, the ALJ ordered the claimant to show cause why the claim should not be dismissed.

The claimant admitted that he received a letter from the Office of Workers' Claims, which informed him that he had two years from January 12, 2004, to file a claim. He testified that he "got a ton of paperwork right after my surgery. . . . So I read it, but really didn't understand it. Everything that I was getting was either from Liberty Mutual or a doctor, so that came out of the blue." He stated that

nothing occurred in the matter until his surgeon, Dr. Wheeler, received a November 16, 2004, letter from the insurance adjuster, requesting answers to various questions regarding the injury. After examining him on January 21, 2005, Dr. Wheeler completed the questionnaire and listed the claimant's current diagnoses as being status post herniated disc lumbar region (x2), stenosis, sciatica, and post laminectomy syndrome. He assigned a 13% permanent impairment rating, stating that no portion of the rating was due to a pre-existing dormant or unrelated injury or condition.

The claimant testified that he delivered the completed questionnaire to the plant nurse, Rhonda Burkhead, on or about January 22, 2005, and asked about its significance. She advised him that the questionnaire's purpose "was so Anita Ashley could come up with a settlement price and a range." He testified that Ms. Ashley "sent me a letter, I believe, saying that she wanted to know exactly what the percentage was before, compared to the 13 percent now, and [that] she thought the 13% was a little high." When they spoke later, she indicated that some of the impairment should be attributed to the 2002 injuries and surgery. After he explained that Dr. Wheeler told him that he was "a hundred percent" after the surgery, she said, "Okay," and the conversation ended. He acknowledged that she did not make an offer to settle the claim but stated that he thought she would do so because she did not inform him that she needed additional information from Dr. Wheeler or tell him that the claim was denied. On February 7, 2006, she informed him by letter that the limitations period had expired and that the employer would no longer pay benefits. After speaking with her, he located the letter from the Office of Workers' Claims

among his papers, obtained counsel, and filed a claim on February 28, 2006.

An affidavit from Ms. Anita Ashley, the insurance adjuster, indicated that she received the questionnaire that Dr. Wheeler completed in January 2005. It also indicated that she explained her concerns regarding pre-existing impairment to Dr. Wheeler in a letter dated May 23, 2005, and asked him to specify the permanent impairment rating that existed after the initial surgery. According to Ms. Ashley, he failed to respond.

The claimant argued that the employer should be estopped from raising a limitations defense such as occurred in *City of Frankfort v. Rogers,* 765 S.W.2d 579 (Ky. App.1988), because its insurance carrier failed to comply with KRS 342.267 and 803 KAR 25:240. He asserted specifically that the carrier's adjuster obtained a permanent impairment rating from Dr. Wheeler more than a year before the limitations period expired and violated 803 KAR 25:240, §§ 4 and 6 by failing to propose a reasonable settlement within the limitations period. He also asserted that conduct by the plant nurse and the adjuster lulled him into thinking that the carrier would offer a settlement and that he would not need to file a claim. He argued that the carrier's misconduct warranted an equitable remedy.

The employer maintained that its carrier did not commit an unfair claims settlement practice and had no obligation to make a settlement offer because liability and the extent and duration of disability were uncertain. The employer also argued that no statute tolls the limitations period based on an unfair claims settlement practice. It emphasized that the claimant received the required letter informing him of the applicable limitations period.

KRS 342.270(1) provides that an injured worker who cannot agree with the employer regarding compensation must file an application for resolution of the claim "within two (2) years after the accident, or . . . within two (2) years after the cessation of voluntary payments, if any have been made." More specifically, KRS 342.185(1) tolls the period of limitations for so long as an employer pays "income benefits." To assure that an injured worker receives notice of the applicable limitations period, KRS 342.040(1) requires an employer who terminates or fails to pay income benefits when due to notify the Department (formerly Office) of Workers' Claims and requires the Department to notify the worker of the right to prosecute a claim. The Department does so with what it terms a "WC–3 letter."[1] Although KRS 342.990 provides civil and criminal penalties for an employer's failure to comply strictly with KRS 342.040(1), Chapter 342 provides no remedy for a worker who, unaware of the applicable limitations period, fails to file a timely claim. Thus, the courts have turned to equitable principles when the circumstances warranted and estopped employers who failed to comply strictly with KRS 342.040(1) from asserting a limitations defense, even in the absence of bad faith or misconduct.[2]

The court explained in *Akers v. Pike County Board of Education,* 171 S.W.3d 740, 743 (Ky.2005), that estoppel is an equitable remedy that courts often invoke to prevent a party from benefiting from its misconduct. A party may be estopped to plead a limitations defense if the party's false representation or fraudulent concealment reasonably induces inaction on the part of the plaintiff. Nothing requires es-

1. *See Billy Baker Painting v. Barry,* 179 S.W.3d 860 (Ky.2005).

2. *Id.*

toppel to be based on a statutory violation by the estopped party. The elements of estoppel include: 1.) acts, language, or silence amounting to a representation or concealment of material facts; 2.) the facts are known to the estopped party but unknown to the other party; 3.) the estopped party acts with the intention or expectation that the other party will rely on its conduct; and 4.) the other party does so to its detriment.[3] *Patrick v. Christopher East Health Care*, 142 S.W.3d 149 (Ky. 2004), explains that the facts and circumstances of each case determine the propriety of resorting to an equitable remedy.

A strong public policy encourages parties to settle workers' compensation claims in order to resolve them promptly, with minimal litigation expenses.[4] Older Kentucky cases hold that insurance settlement negotiations do not toll the limitations period or estop a carrier from asserting a limitations defense unless the carrier makes a false promise to settle the claim or engages in other misleading behavior that reasonably induces a tardy filing.[5] They also hold that voluntary medical payments do not toll the limitations period.[6] Courts in other jurisdictions have estopped carriers and their principals from asserting a limitations defense when they induced a late filing by actions or communications that led a worker to believe that a settlement would be reached or by intentionally prolonging settlement negotiations.[7]

In 1996 the legislature enacted KRS 342.267 to protect injured workers, most of

3. *Gray v. Jackson Purchase Production Credit Association*, 691 S.W.2d 904 (Ky.App.1985).

4. *Whittaker v. Pollard*, 25 S.W.3d 466 (Ky. 2000); *Golden Oak Mining Co., L.P. v. Kentucky Coal Workers' Pneumoconiosis Fund*, 19 S.W.3d 99 (Ky.2000); *Newberg v. Weaver*, 866 S.W.2d 435 (Ky.1993).

5. *Carroll County Memorial Hospital v. Yocum*, 489 S.W.2d 246 (Ky.1972) (estoppel appropriate where claimant's attorney relied on representation that carrier would waive limitations period for a reasonable time to conclude settlement negotiations); *Miller v. Thacker*, 481 S.W.2d 19 (Ky.1972) (estoppel appropriate where plaintiff's parents relied reasonably on carrier's misinformation concerning limitations period); *Cuppy v. General Accident Fire & Life Assurance Corporation, Ltd.*, 378 S.W.2d 629 (Ky.1964) (statements that adjuster wanted plaintiff to get well and that carrier would take care of everything did not toll KRS 413.140's limitations period where more than a year elapsed between the statements and the filing); *Pospisil v. Miller*, 343 S.W.2d 392, 394 (Ky.1961) (plaintiff presumed to know KRS 413.140's limitations period and had no right to rely on representations by her adversary, the defendant's adjuster); *Pipes Chevrolet Company v. Bryant*, 274 S.W.2d 663 (Ky.1954) (adjuster's discussion of approximate entitlement to compensation and payment of medical bills was in nature of settlement negotiation and did not warrant estoppel); *Island Creek Coal Company v. Lewis*, 474 S.W.2d 361 (Ky.1971) (adjuster's refusal to settle before he knew if the "Osborne law" would change insufficient to warrant estoppel).

6. *Parrish v. Briel Industries, Inc.*, 445 S.W.2d 119 (Ky.1969) (reimbursement of medical expenses does not toll the statute of limitations); *Kentucky West Virginia Gas Co. v. Spurlock*, 415 S.W.2d 849 (Ky.1967) (payments of medical bills are not "voluntary payments" within the meaning of KRS 342.270(1)); *Miles v. General Electric Co.*, 280 S.W.2d 529 (Ky. 1955) ("payments" means payments of compensation, not medical bills). *Compare Purdy v. Palmore*, 789 S.W.2d 12 (Ky.1990) (voluntary medical payments toll limitations period for claims controlled by 1972 Act); *Hetteberg v. City of Newport*, 616 S.W.2d 35 (Ky.1981) (voluntary medical payments toll limitations period).

7. *Robinson v. Pan American World Airways, Inc.*, 650 F.Supp. 125 (S.D.N.Y.1986); *Cassidy v. Luburich*, 49 Ill.App.3d 596, 7 Ill.Dec. 154, 364 N.E.2d 315 (1977). *See McAdam v. Grzelczyk*, 911 A.2d 255 (R.I.2006), and Allan E. Korpela, "Settlement Negotiations as Estopping Reliance on Statute of Limitations," 39 ALR 3rd 127 (1971).

whom lack knowledge of the law and insurance technicalities. KRS 342.267 prohibits insurance carriers, self-insurance groups, and self-insured employers from engaging in unfair claims settlement practices in violation of Chapter 342 or KRS 304.12–230, which prohibits certain acts and omissions by insurance carriers. KRS 304.12–230(5) specifies that an insurer's "fail[ure] to affirm or deny coverage of claims within a reasonable time" is such a practice. KRS 342.267 permits a $1,000 to $5,000 fine to be imposed for each violation and permits the Department's executive director to revoke a carrier's certificate of authority to sell insurance in Kentucky for a pattern of violations. Proceedings under KRS 342.267 are separate from the affected worker's claim because the real party in interest under the statute is the Commonwealth.

803 KAR 25:240 imposes various duties on workers' compensation insurance carriers and their agents. Section 4 of the regulation requires carriers to "diligently investigate a claim for facts warranting the extension or denial of benefits." Section 6 requires carriers to "attempt in good faith to promptly pay a claim in which liability is clear." It also prohibits them from compelling a worker to institute formal proceedings to recover benefits in such a claim, from requiring a worker to obtain information that is accessible to the carrier, from offering a settlement for substantially less than the reasonable value of a claim, or from threatening to appeal in order to compel such a settlement. Section 5, entitled "Standards for Prompt and Timely Actions," provides as follows:

(1) After receipt of notice of a work-related injury necessitating medical care or causing lost work days, a carrier shall as soon as practicable advise an injured employee of acceptance or denial of the claim.

(2) A carrier shall provide to the employee in writing the specific reasons for denial of a claim.

(3) A carrier shall inform an employee of additional information needed for the claim to be accepted.

(4) A carrier shall meet the time constraints for accepting and paying workers' compensation claims established in KRS Chapter 342 and applicable administrative regulations.

KRS 342.267 and 803 KAR 25:240 evince a clear legislative intent to promote the fair and equitable settlement of workers' compensation claims without resort to litigation.[8] They assure that a worker will receive prompt and decisive information regarding the status of a claim from the time that the employer receives notice until the claim is finally resolved. The regulation protects injured workers from forfeiting viable claims by helping to prevent carriers from engaging in conduct that "runs out the clock." It clearly acknowledges that settlements may occur at any time until a claim is finally resolved and does not limit itself to the carrier's initial acceptance or denial.[9] In other words, it uses the term "claim" as a collective noun that applies to the claims for permanent income and medical benefits as well as to the claims for TTD and medical treatment at the time of injury.

Chapter 342 provides no remedy to a worker who receives the WC–3 letter but fails to file a timely application for permanent income and medical benefits due to a carrier's subsequent misconduct.[10] KRS

---

8. *See* 803 KAR 25:240, § 6.

9. *Id.*

10. *Travelers Indemnity Company v. Reker,* 100 S.W.3d 756 (Ky.2003) (KRS 342.267 does not authorize a civil action for damages for a

342.267 and 803 KAR 25:240 broaden the circumstances that warrant an estoppel by providing new grounds for deeming a carrier's silence to be misleading.

The claimant had the burden to prove his assertion that the adjuster violated KRS 342.267 or 803 KAR 25:240 and that the misconduct reasonably induced the tardy filing. The ALJ failed to address the arguments, and nothing indicates that the executive director was asked to investigate. As a consequence, the record contains no pertinent findings of fact. Although KRS 342.285 designates the ALJ as the finder of fact in workers' compensation proceedings, the circumstances do not require a remand for consideration under 803 KAR 25:240 because overwhelming evidence compelled findings that the carrier violated the regulation and that the conduct reasonably induced the tardy filing.[11]

After notifying the Office of Workers' Claims that TTD benefits were terminated, which prompted the WC–3 letter, the adjuster obtained a permanent impairment rating from Dr. Wheeler and informed the claimant in a letter that she thought the rating was too high. He received the letter, after which the parties discussed various issues relating to permanent disability benefits. The adjuster failed to advise him after the conversation whether she would accept or deny his claim for permanent income and medical benefits; failed to inform him that she needed additional information in order to decide whether to accept the claim; and failed to provide specific reasons in writing for denying permanent income and medical benefits if that was her position, all of which violated 803 KAR 25:240, § 5.[12] Although she did not make a settlement offer, the discussion led the claimant to think reasonably that she required no further information, that she would make a settlement offer, and that he would not need to file a claim. Thus, he took no action until she informed him that the limitations period had expired. At that point, he promptly obtained counsel and filed a claim.

Equity will not permit a carrier or its principal to blatantly disregard the obligations created by 803 KAR 25:240 and benefit from the misconduct.[13] The employer's carrier failed to comply with 803 KAR 25:240. Thus, equity required the employer to be estopped from asserting a limitations defense.

The decision of the Court of Appeals is affirmed and the claim is remanded for the ALJ to consider the merits.

MINTON, C.J.; CUNNINGHAM, NOBLE, SCHRODER, SCOTT and VENTERS, JJ., concur. ABRAMSON, J., not sitting.

carrier's alleged bad faith in refusing to pay benefits and, therefore, limits a worker to the exclusive remedy provided in Chapter 342).

**11.** *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986).

**12.** One could find reasonably that she also violated the regulation by failing to investigate the claim diligently and follow up on the unanswered May 2005 letter to Dr. Wheeler.

**13.** *See City of Frankfort v. Rogers, supra.*