RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0171-WC

GLENN DAVIS                                     APPELLANT

ON APPEAL FROM COURT OF APPEALS<br>
V.             NO. 2019-CA-1804<br>
WORKERS' COMPENSATION BOARD<br>
NO. WC-16-63660

BLENDEX COMPANY,                            APPELLEES
HONORALBE JONATHAN R. WEATHERBY,
ADMINISTRATIVE LAW JUDGE, AND
WORKERS' COMPENSATION BOARD

### OPINION OF THE COURT BY JUSTICE LAMBERT

### <u>AFFIRMING</u>

Glenn Davis (Mr. Davis) appeals a decision of the Court of Appeals that affirmed the Workers' Compensation Board's (the Board) holding that the Administrative Law Judge (ALJ) properly found that his claim for workers' compensation benefits was barred by the applicable statute of limitations. After review, we affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not in dispute. At the time of his injury, Mr. Davis was a fifty-six-year-old high-school graduate with two years of college education. His employer, Blendex Company (Blendex), manufactured food

goods such as biscuit mixes and cereal mixes.  Mr. Davis had worked for Blendex since 1987, and at the time of his injury he worked in product quality control for ten hours a day, four days per week.  The nature of his position required him to stand and walk around Blendex's factory for the majority of his workdays.

On Monday, April 11, 2016, Mr. Davis went into one of the bathrooms at the factory to check a piece of equipment.  While he was in the bathroom, one of his co-workers inadvertently sprayed him with a heated pressure washer resulting in a severe burn on the top of his right foot.  He immediately went to the front office of the factory for medical treatment.  When Mr. Davis' sock was removed, the top layer of skin on his foot peeled off.  The wound was cleaned and dressed, and he was sent home.

The following day, he received medical treatment at BaptistWorx, an occupational health clinic, which placed him on "sit-down duty" with no prolonged walking.  Mr. Davis then worked for the remainder of that day and then from April 13-15; April 11-14 was Mr. Davis' regular work week, and April 15 was an "overtime day."  On the following Monday, April 18, BaptistWorx told him he needed to be seen by a wound care specialist, as his burn had become swollen and infected.  On April 19, Mr. Davis saw Dr. Ramsey Kevin Majzoub, a wound care specialist.  Dr. Majzoub instructed him not to work until their next appointment on April 26.  Mr. Davis therefore did not work on April 19-21, nor did he work the following Monday and Tuesday, April 25-26.  He accordingly missed a total of five workdays.

On April 26, Dr. Majzoub released Mr. Davis to return to work with the conditions that he work only half-days, that he not participate in any prolonged walking, and that he elevate his foot while sitting. Mr. Davis testified that Blendex accommodated these conditions by having him sit at a desk, prop his foot up, and do computer work such as entering work orders. He acknowledged that the work was not busy work, and that someone else would have been doing it if he was not. Mr. Davis was later medically released by Dr. Majzoub to return to full hours and job duties on June 20.

Mr. Davis testified that Kate Claudio (Ms. Claudio), the insurance adjuster for Blendex's workers' compensation insurance carrier Amerisure, discussed his options for workers' compensation benefits with him:

> **Q:** Now, did your (sic) ever inquire with either Blendex or their workers' comp carrier about workers' comp income benefits?
> **A:** Kate Claudio went over some of that with me.
> **Q:** All right. And she went over that with you and what did you all discuss?
> **A:** She told me I'd have to be off work 21 days minimum and that I would draw a portion of my salary after that.

But rather than taking a reduction in income, Mr. Davis chose to work half days and supplement his income using his previously accrued paid time off (PTO) hours and vacation pay. Accordingly, Mr. Davis never sought or received any temporary total disability (TTD) benefits prior to the applicable statute of limitations expiring. There is no evidence in the record that Blendex coerced or fraudulently induced Mr. Davis into using his PTO or vacation hours in lieu of seeking TTD benefits.

3

After Mr. Davis was medically released to full duty, he continued to experience burning and pain in his foot. He therefore contacted Amerisure and requested a doctor's appointment. Amerisure sent him to Dr. Ellen Ballard. His first appointment with Dr. Ballard was July 20, 2016, and he saw her a total of six times. On September 14, Dr. Ballard opined that Mr. Davis had reached maximum medical improvement (MMI), and later determined that he had a 3% impairment rating. Mr. Davis became displeased with Dr. Ballard's treatment, and began seeing Dr. Alan Mauser, a podiatrist, in November of 2016. Both Dr. Ballard's and Dr. Mauser's primary treatment was to prescribe a Flector Patch.[1]

On November 30, Ms. Claudio offered to settle Mr. Davis' claim. Mr. Davis testified before the ALJ about their conversation:

> **Q:** Do you recall a telephone conversation with Kate Claudio on November 30th, 2016, in which you told her that you didn't feel that the settlement they were offering you was appropriate for an injury that you would have [to] deal with for the rest of your life?
> **A:** Yes.
> **Q:** Okay. So, had she told you what the terms of the agreement were?
> **A:** She told me they had an impairment rating and she gave me a dollar figure, yes.
> [ … ]
> **Q:** Okay. Did you tell [Ms. Claudio] at that time, November 30th, 2016, that you would speak with an attorney about the adequacy of the settlement offer?
> **A:** Yes.
> **Q**: Okay.

---

[1] A "Flector Patch (diclofenac epolamine topical patch) is a pain medication. It helps relieve pain and inflammation (swelling) in a small area of your body, such as from a sprain, strain, bruise, or arthritis. It contains a nonsteroidal anti-inflammatory drug (NSAID)." https://www.mskcc.org/cancer-care/patient-education/flector-patch (last accessed May 21, 2021).

**A:** Because the nature of the injury, I mean, that would only make sense to consult with someone that knows more about this than I do.

**Q:** Sure. And did [Ms. Claudio] tell you that the offer was based on an impairment rating provided by Dr. Ballard?

**A:** Yes.

**Q:** Okay. And it was shortly after that phone call—it looks like that phone call was November 30th, 2016—on January 26th, 2017 that you changed your designated physician to Dr. Mauser; is that right?

**A:** Yes.

**Q:** Okay. And so it sounds like you weren't satisfied with the impairment rating that Dr. Ballard had given you; is that true?

**A:** I didn't think it was adequate for the injury, yes.

Blendex and Mr. Davis never reached a settlement agreement, and on August 10, 2018, two years and four months from the date of his injury, Mr. Davis filed an application for resolution of his claim (Form 101). Blendex denied Mr. Davis' claim citing the applicable two-year statute of limitations. The claim was thereafter bifurcated to determine the threshold issue of whether the claim was time barred. During the formal hearing, Mr. Davis testified that he was aware when the statute of limitations would expire:

**Q:** Okay. Did anyone tell you that they would continue to pay your medical benefits after the statute of limitations expired?

**A:** No.

[ ... ]

**Q:** Okay. How did you find out that the statute of limitations was two years?

**A:** The human resources lady at work told me.

**Q:** Okay. And when did you have that discussion with her?

**A:** Golly. That wasn't too long before it actually ran out. A week maybe.

**Q:** Okay. So before the statute of limitations expired, she explained to you that it was about to expire?

**A:** Yes.

Based on the foregoing evidence, the ALJ found that the claim was not timely under KRS[2] 342.185, and that the facts did not warrant the statute of limitations being tolled. In his findings of fact and conclusions of law, the ALJ found:

> 6. KRS 342.040(1) requires an employer to notify the Department of Workers' Claims when it terminates TTD or fails to pay TTD to a worker who has missed more than seven days of work due to a work-related injury. It further requires that upon said notification, the Department must advise the worker in writing of his right to file a claim and of the applicable period of limitations.
>
> 7. KRS 342.185 operates together with KRS 342.040(1) and tolls the period of limitations until after the payment of voluntary income benefits ceases in order to protect injured workers from being lulled into a false sense of security by receiving such payments and, therefore, failing to actively pursue a claim. *City of Frankfort v. Rogers*, 765 S.W.2d 579 (Ky. App. 1988).
>
> 8. The facts in this matter dictate that not only was there no false sense of security created but that the Plaintiff was actually offered a settlement by the carrier which he did not accept. The evidence indicates that thereafter he was advised by the carrier that the statute of limitations period was soon to expire and expressed his plan to seek counsel and file a claim. The Plaintiff however did not file his claim until the statute had run.
>
> 9. Additionally, *Roark v. United Parcel Service*, 2007 WL 4139636 stands for the proposition that an employer does not become liable to pay temporary total disability benefits until the employee misses seven consecutive days of work which would have triggered the obligation for the employer to pay TTD benefits and to notify the Department of Workers' Claims. The ALJ is therefore unable to apply the principles of equitable estoppel in this instance because there was no injustice to the Plaintiff and because there was no obligation to notify the Department of Workers Claims. The Plaintiff was also specifically aware of the applicable statute of limitations period and merely failed to act. The ALJ therefore finds that this matter must be dismissed as it was not filed in a timely manner.

---

[2] Kentucky Revised Statute.

6

After the entry of the foregoing order, Mr. Davis filed a petition for

reconsideration.  In it, he argued that the ALJ

> failed to address Plaintiff's assertion that the employer should have
> paid TTD benefits during that two-month period following the
> injury in which the Plaintiff was limited to 5 hour work days and
> was required to keep his foot elevated.  *Trane Commercial Systems
> v. Tipton,* 481 S.W.3d 800 (Ky. 2016).  We request a finding from
> the ALJ on the issue of whether Plaintiff was entitled to TTD
> benefits during this time period.

The ALJ denied Mr. Davis' petition for reconsideration.  The ALJ reasoned:

> 2. The Kentucky Supreme Court has determined in *Trane
> Commercial Systems v. Tipton,* 481 S.W.3d 800 (Ky. 2016), that it
> would not be reasonable and it does not further the purpose for
> paying income benefits, to pay TTD benefits to an injured employee
> who has returned to employment simply because the work differs
> from what she performed at the time of injury.  Therefore, absent
> extraordinary circumstances, an award of TTD benefits is
> inappropriate if an injured employee has been released to return to
> customary employment, i.e. work within her physical restrictions
> and for which she has the experience, training, and education; and
> the employee has actually returned to employment.
>
> 3. The Plaintiff in this matter returned to work without a loss of
> pay and was able to work within his stated restrictions until
> ultimately being returned to regular duty.  The extraordinary
> circumstances referred to in *Tipton, supra,* were not specifically
> identified but the ALJ finds that the Plaintiff was able to continue
> in his job within the stated restrictions without a loss of income
> and as such his situation falls short of the extraordinary
> circumstances [contemplated] by the Kentucky Supreme Court.
>
> 4. The Kentucky Supreme Court also specifically identified in
> *Double L Constr. v. Mitchell,* 182 S.W.3d 509 (Ky. 2005), that the
> general purpose for awarding income benefits such as TTD is to
> compensate workers for income that is lost due to an injury,
> thereby enabling them to provide the necessities of life for
> themselves and their dependents.  The ALJ finds that this purpose
> has been achieved in this matter and as such the Petition is
> **DENIED**.

7

Mr. Davis then appealed the ALJ's rulings to the Board, which affirmed the

ALJ. In relevant part, the Board held:

> we find no abuse of discretion in the ALJ's conclusion that Davis' light duty work constituted a return to employment within the meaning of KRS 342.0011(11)(a) and applicable case law. Davis performed data entry concerning Blendex's sales and purchasing orders. He acknowledged the office work was not "made-up" work, and would be completed by someone else had he not done so. There was no evidence that this office work was outside Davis' experience and training at Blendex.
>
> Further, the ALJ enjoys the discretion to determine whether extraordinary circumstances exist such that an award of TTD benefits would be warranted despite the injured worker's return to employment. The ALJ articulated his reasoning on this issue, taking into account that the purpose of TTD benefits is to protect the injured worker's income and Davis was able to maintain his income by using vacation time. Under these circumstances, we cannot conclude the ALJ abused his discretion.

A unanimous Court of Appeals panel affirmed the Board in the appeal that

followed,[3] and Mr. Davis now appeals to this Court.

Additional facts are discussed below as necessary.

## II. ANALYSIS

Mr. Davis asserts that the ALJ, the Board, and the Court of Appeals

erred by failing to hold that the two-year statute of limitations on his claim was

tolled. Mr. Davis alleges that he was entitled to TTD benefits during the two-

month period that he was released to part-time, limited-duty work, and that

Blendex's failure to pay TTD benefits during that time should operate to toll the

two-year statute of limitations. Therefore, the dispositive issues of this case

---

[3] *Davis v. Blendex Co.*, 2019-CA-001804-WC, 2020 WL 1815972, at *4 (Ky. App. Apr. 10, 2020).

are whether Mr. Davis was in fact entitled to TTD for that period, and, if not, whether equitable principles nonetheless require that the statute of limitations be tolled. Mr. Davis bore the burden of proving his entitlement to TTD, and "[w]here the ALJ finds against the party with the burden of proof, the standard of review on appeal is whether the evidence compelled a contrary finding."[4] Similarly, Blendex bore the burden of proof to show that Mr. Davis' claim was time barred.[5]

Mr. Davis' primary contention is that he was entitled to TTD benefits for the two-month period that he was released to do only part-time, limited duty work because it did not constitute a "return to employment" under KRS 342.0011(11)(a) and, by extension, this Court's recent holding in *Tipton, supra*.

KRS 342.0011(11)(a) defines a temporary total disability as a "condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment." Accordingly, an employee may receive TTD benefits until they either (a) reach MMI, or (b) improve to the point that they can "return to employment." Unfortunately, KRS Chapter 342 does not specify what "return to employment" means. This was precisely the issue that this Court addressed in *Tipton*.

In *Tipton*, the employee worked in the control department of the employer's commercial air conditioning manufacturing plant where she tested

---

[4] *Livingood v. Transfreight*, LLC, 467 S.W.3d 249, 254 (Ky. 2015).

[5] *See, e.g., Lizdo v. Genetic Equip.*, 74 S.W.3d 703, 705 (Ky. 2002).

air conditioner units.[6]  The employee fell and fractured her right patella while testing an air conditioner unit.[7]  Due to this injury, the employee did not work from May 6, 2010, the date of her injury, until March 22, 2011, when she was medically released to return to "sedentary work activity with no overtime."[8]  On March 22, the employee returned to work "at a different job, assembling electrical-circuit boards and earning the same hourly rate of pay as she had before the injury."[9]  In July of 2011, she was released to return to her pre-injury job duties, but she did not believe she could perform them without significant problems.[10]  She therefore bid on, and was permanently placed in, her post-injury job of assembling circuit boards.[11]

The employer had stopped paying TTD benefits to the employee when she returned to limited-duty work in March of 2011.[12]  The employee argued that she was entitled to TTD benefits until she was released to return to her pre-injury job duties in July of 2011.[13]  The ALJ denied the employee's claim, finding that "her release and return to 'customary, non-minimal work' justified termination of TTD benefits when Tipton returned to work on March 22, 2011." The Board affirmed the ALJ's finding, but the Court of Appeals reversed,

---

[6] *Tipton*, 481 S.W.3d at 802.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

holding that the employee "had not performed the circuit board assembly job prior to her injury; therefore ... her return to work on March 22, 2011 did not terminate her entitlement to TTD benefits."[14]

Accordingly, this Court was called upon to determine "what the phrase 'return to employment' as used in [KRS] 342.0011(11)(a) [meant]."[15] In that vein, the unanimous *Tipton* Court held:

> [w]e take this opportunity...to clarify what standards the ALJs should apply to determine if an employee "has not reached a level
>
> of improvement that would permit a return to employment." KRS 342.0011(11)(a). Initially, we reiterate that "**[t]he purpose for awarding income benefits such as TTD is to compensate workers for income that is lost due to an injury, thereby enabling them to provide the necessities of life for themselves and their dependents**." *Double L Const., Inc.*, 182 S.W.3d at 514.
>
> Next, we note that, once an injured employee reaches MMI that employee is no longer entitled to TTD benefits. Therefore, the following only applies to those employees who have not reached MMI but who have reached a level of improvement sufficient to permit a return to employment.
>
> As we have previously held, "[i]t would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the type [of work] that is customary or that he was performing at the time of his injury." *Central Kentucky Steel v. Wise,* [19 S.W.3d 657, 659 (Ky. 2000)]. However, **it is also not reasonable, and it does not further the purpose for paying income benefits, to pay TTD benefits to an injured employee who has returned to employment simply because the work differs from what she performed at the time of injury. Therefore, absent extraordinary circumstances, an award of TTD benefits is inappropriate if an injured employee has been released to return to customary employment, i.e. work within her physical restrictions and for which she has the experience, training, and education; and the employee has actually**

---

[14] *Id.* at 802-03.

[15] *Id.* at 803.

11

**returned to employment.** We do not attempt to foresee what extraordinary circumstances might justify an award of TTD benefits to an employee who has returned to employment under those circumstances; however, in making any such award, an ALJ must take into consideration the purpose for paying income benefits and set forth specific evidence-based reasons why an award of TTD benefits in addition to the employee's wages would forward that purpose.[16]

The *Tipton* Court accordingly reversed the Court of Appeals and reinstated the ALJ's denial of TTD benefits during the time period at issue.[17]

Here, Mr. Davis' argument does not focus on the differences in his work *duties* pre and post-injury, as in *Tipton*. Rather, he argues that the fact that he was a full-time employee released to only part-time work entitled him to TTD benefits. He contends that, "the term 'customary [employment]' refers not only to the *type* of work performed, but also the *amount or duration* of that work." To date, no cases in our jurisprudence have addressed the application of *Tipton* to a decrease in the number of hours an injured employee is medically released to work. Mr. Davis also argues that the ALJ erred by finding that he suffered no loss of income due to his use of PTO and vacation hours to supplement his income.

To begin, the *Tipton* case made it clear that it is not reasonable and it does not further the purpose of paying income benefits "to pay TTD benefits to an injured employee who has returned to employment **simply because the**

---

[16] *Id.* at 807 (emphasis added).

[17] *Id.*

**work differs** from what [he] performed at the time of injury."[18]  In addition, TTD benefits should not be paid if an injured employee is released to return to "work within [his] physical restrictions and for which [he] has the experience, training, and education; and the employee has actually returned to employment."[19]  Mr. Davis does not assert that his job duties were not within his physical restrictions or that he did not have the experience, training, and education to perform those duties.  He simply asserts that the fact that his work hours went from full-time pre-injury to part-time post-injury, alone, is sufficient to find that he did not return to his customary employment.  We disagree.

We can discern no requirement from the language of *Tipton* that an injured employee must return his pre-injury work hours in order to return to employment.  Rather, the only requirement is that he *actually returned to employment.*  And, under the facts of this case, simply because the number of work hours differed from what Mr. Davis performed at the time of the injury does not in and of itself mean that he did not return to employment.  We accordingly hold that Mr. Davis' return to part-time employment from full-time employment, alone, is not sufficient to constitute an "extraordinary circumstance" warranting TTD benefits under *Tipton.*

In that vein, Mr. Davis further notes that "[t]he purpose for awarding income benefits such as TTD is to compensate workers for income that is lost

---

[18] *Id.* (emphasis added).

[19] *Id.*

13

due to an injury, thereby enabling them to provide the necessities of life for themselves and their dependents."[20]  Accordingly, he argues, the ALJ erred by finding that he suffered no lost wages due to the fact that he used his PTO and vacation hours to supplement his part-time income.  However, as Blendex points out, Mr. Davis *chose* to work part time and supplement his wages with PTO and vacation hours.  Mr. Davis knew from his conversation with Blendex's insurance adjustor that if he chose to pursue TTD benefits, he would only receive a portion of his salary in accordance with KRS 342.730.  He therefore opted not to pursue workers' compensation benefits at that time.  Blendex has argued that Mr. Davis made this decision of his own volition at every stage in these proceedings, and Mr. Davis has never claimed that the assertion is false.  Nor has Mr. Davis alleged that Blendex coerced or mislead him into using his PTO and vacation hours so that it would not have to pay him TTD benefits, or so that it could credit his use of those hours towards its obligation to pay him TTD benefits.

Consequently, we affirm the ALJ's finding that Mr. Davis did not meet his burden of proof to demonstrate his entitlement to TTD benefits, as the evidence does not compel a contrary finding.

Further, even assuming arguendo that the ALJ did err, we cannot hold under these facts that tolling the applicable statute of limitations would have been appropriate.  The cases of this Court that address whether tolling a

---

[20] *Double L Const., Inc.,* 182 S.W.3d at 514.

14

statute of limitations was the correct remedy in a workers' compensation case almost invariably concern whether the employee was properly appraised of his right to prosecute his claim and of the applicable statute of limitations for his claim. On that front, KRS 342.040(1) directs:

> Except as provided in KRS 342.020, **no income benefits shall be payable for the first seven (7) days of disability** unless disability continues for a period of more than two (2) weeks, in which case income benefits shall be allowed from the first day of disability. All income benefits shall be payable on the regular payday of the employer, commencing with the first regular payday after seven (7) days after the injury or disability resulting from an occupational disease, with interest at the rate of six percent (6%) per annum on each installment from the time it is due until paid, except that if the administrative law judge determines that the delay was caused by the employee, then no interest shall be due, or determines that a denial, delay, or termination in the payment of income benefits was without reasonable foundation, then the rate of interest shall be twelve percent (12%) per annum. In no event shall income benefits be instituted later than the fifteenth day after the employer has knowledge of the disability or death. Income benefits shall be due and payable not less often than semimonthly. **If the employer's insurance carrier or other party responsible for the payment of workers' compensation benefits should terminate or fail to make payments when due, that party shall notify the commissioner of the termination or failure to make payments and the commissioner shall, in writing, advise the employee or known dependent of right to prosecute a claim under this chapter**.[21]

For our purposes, under KRS 342.040(1) an employer has no responsibility to pay an injured employee income benefits until they have missed at least seven days of work due to a work-related injury. But, if an employer is obligated to pay benefits under the statute, it must inform the Department of Workers' Claims (DWC) if it either fails to make payments when due, or when it

---

[21] (emphasis added).

15

terminates benefits. The purpose of this notification is so that the DWC can then inform the employee of his right to prosecute his claim and of the applicable statute of limitations. However, Chapter 342 does not require notice to the employee of his right to prosecute or his statute of limitations if TTD benefits were neither owed nor paid.[22]

For many years this Court has considered an employee's right to know that they can file a claim and the applicable statute of limitations so vital that it has "turned to equitable principles when the circumstances warranted and estopped employers who failed to comply strictly with KRS 342.040(1) from asserting a limitations defense, even in the absence of bad faith or misconduct."[23] However, "estoppel is an equitable remedy and [the] appropriateness of its application depends on the facts and circumstances of each case."[24]

> A party may be estopped to plead a limitations defense if the party's false representation or fraudulent concealment reasonably induces inaction on the part of the plaintiff. Nothing requires estoppel to be based on a statutory violation by the estopped party. The elements of estoppel include: 1.) acts, language, or silence amounting to a representation or concealment of material facts; 2.) the facts are known to the estopped party but unknown to the other party; 3.) the estopped party acts with the intention or

---

[22] *Spears v. Carhartt, Inc.*, 215 S.W.3d 1, 7 (Ky. 2006) ("Chapter 342 does not require actual notice of every procedural requirement. It requires notice of the need to file a claim and of the applicable period of limitations in cases where the employer terminates TTD or does not pay TTD when due, but it does not require notice if TTD is neither due nor paid.") (citing *J & V Coal Co. v. Hall*, 62 S.W.3d 392, 395 (Ky.2001)).

[23] *Hitachi Auto. Prods. USA, Inc. v. Craig*, 279 S.W.3d 123, 125 (Ky. 2008). *See also, e.g., Kentucky Container Serv., Inc. v. Ashbrook*, 265 S.W.3d 793, 795-96 (Ky. 2008).

[24] *J & V Coal Co.*, 62 S.W.3d at 395 (discussing *Newberg v. Hudson*, 838 S.W.2d 384 (Ky. 1992)).

expectation that the other party will rely on its conduct; and 4.) the other party does so to its detriment.[25]

Accordingly, the majority of our case law wherein tolling was held to be appropriate involve facts where, for one reason or another, the employer failed to meet its notice requirements under KRS 342.040(1) resulting in the employee never being informed of his or her right to prosecute a claim or the applicable statute of limitations.

By way of example, in *City of Frankfort v. Rogers*, the employer paid the injured employee TTD benefits for a time, but altogether failed to inform the DWC when it terminated those payments.[26] The employee was therefore never informed that he would no longer receive benefits, and the employee later filed his Form 101 after the statute of limitations had expired.[27] The Court of Appeals ruled that tolling the statute of limitations was appropriate, and held that "an employer cannot blatantly disregard its statutory obligation under KRS 342.040 and thereby manufacture the defense of limitation."[28]

The same rule was applied in *H.E. Neumann Co. v. Lee*.[29] In that case, the employee missed more than seven days of work following a heart attack that he alleged was work-related.[30] The employer both failed to submit a first

---

[25] *Craig*, 279 S.W.3d at 125-26.

[26] *Rogers*, 765 S.W.2d at 580.

[27] *Id.*

[28] *Id.*

[29] 975 S.W.2d 917 (Ky. 1998).

[30] *Id.* at 919.

17

report of injury form[31] and failed to inform the DWC that it would not pay the employee benefits, as it did not believe the heart attack was work-related.[32] The employee was not informed that he would no longer receive benefits until after the statute of limitations had expired, and he filed his Form 101 a few days after he was apprised of the denial.[33] This Court estopped the employer from asserting an SOL defense:

> the failure of the employer herein, to satisfy the statutory notification requirements, acted to toll the statute of limitations by estopping the employer from prevailing on a statute of limitations defense as claimant was never notified by the board regarding his rights and the time frame in which he must act.[34]

Employees have also been permitted to toll an applicable statute of limitations in cases where the employer attempted in good faith to satisfy its notice requirements, but was unsuccessful. In *Bill Baker Painting v. Barry*, the employer paid the employee TTD benefits for a time and later terminated those benefits on the day the employee returned to work.[35] The employer filed a notice of termination of benefits form with the DWC, but the employer did not provide the date that the benefits were terminated, i.e. the day the employee returned to work.[36] Therefore, due to a policy the DWC had at that time, it did

---

[31] KRS 342.038(1) mandates that an employer inform the DWC when a work-related injury causes an employee to miss work for more than one day.

[32] *H.E. Neumann Co.*, 975 S.W.2d at 919.

[33] *Id.*

[34] *Id.* at 921.

[35] 179 S.W.3d 860, 861 (Ky. 2005).

[36] *Id.*

not send the employee a notification letter informing him of the date of the termination of payments and the applicable statute of limitations.[37] The employee later filed his claim for benefits outside the applicable statute of limitations.[38] This Court held that the ALJ did not err by finding that equitable principles favored tolling:

> [a]lthough the carrier continues to assert that the [form] it filed was not deficient, the fact remains that the form did not include a date that it concedes was mandatory. Although it is unfortunate that the carrier was not informed of the omission on its [form] and given an opportunity to rectify the matter, we are not convinced that the ALJ erred by concluding that the equities favored the claimant.[39]

Additionally, tolling has previously been held to be an appropriate remedy when an employer's workers' compensation insurance adjuster fraudulently induced an employee to file an untimely Form 101. In *Hitachi Auto. Prods. USA, Inc. v. Craig*, "overwhelming evidence" demonstrated that the employer's insurance adjuster made the employee believe that a settlement offer was forthcoming thereby inducing him not to file a Form 101 until after the statute of limitations had expired.[40] Then, after the statute of limitations had expired, the employer terminated TTD benefits and informed the employee

---

[37] *Id.* at 862.

[38] *Id.* at 861.

[39] *Id.* 864-65. *See also Ashbrook*, 265 S.W.3d at 797 (holding that the employer's filing of a defective termination of benefits form warranted tolling because the employee was never informed of the applicable statute of limitations until after it had expired).

[40] *Craig*, 279 S.W.3d at 128.

19

that the statute of limitations had expired.[41] This Court held that tolling was an appropriate remedy, noting that

> [a]lthough [the adjuster] did not make a settlement offer, the discussion led the claimant to think reasonably that she required no further information, that she would make a settlement offer, and that he would not need to file a claim. Thus, he took no action until she informed him that the limitations period had expired. At that point, he promptly obtained counsel and filed a claim...Equity will not permit a carrier or its principal to blatantly disregard the obligations created by 803 [Kentucky Administrative Regulation] KAR 25:240[42] and benefit from the misconduct. The employer's carrier failed to comply with 803 KAR 25:240. Thus, equity required the employer to be estopped from asserting a limitations defense.[43]

In this case, Mr. Davis missed a total of five days of work. Therefore, Blendex had no obligation under KRS 342.040(1) to inform the DWC that it would not pay Mr. Davis TTD benefits. And, because TTD benefits were never paid, it had no obligation to inform the DWC of a termination of benefits. As discussed *supra*, Mr. Davis failed to demonstrate an entitlement to TTD benefits. Therefore, there is no valid argument that Blendex failed to satisfy its statutory requirements under KRS 342.040(1).

Further, unlike in *Craig*, Blendex's insurance carrier made a settlement offer to Mr. Davis in November of 2016, one year and five months prior to the expiration of his statute of limitations. The settlement offer was, according to Blendex, based on an impairment rating provided by one of Mr. Davis' treating

---

[41] *Id*. at 124.

[42] 803 KAR 25:240 covers unfair claims settlement practices within the realm of workers' compensation.

[43] *Craig*, 279 S.W.3d at 128.

20

physicians. Mr. Davis testified that he rejected the offer because he did not feel it was sufficient and informed the insurance adjuster that he intended to consult with an attorney about the offer.

Finally, Mr. Davis testified that Blendex informed him of the applicable statute of limitations for his claim about a week before it expired. Yet he waited until four months after the statute of limitations expired to file his Form 101.

## III. CONCLUSION

Based on the foregoing facts and case law, we hold that the ALJ correctly determined that equitable principles did not warrant the tolling of the statute of limitations in this case. We accordingly affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Phillipe William Rich

COUNSEL FOR APPELLEE, BLENDEX COMPANY:

Stephanie Dawn Ross
Reminger, Co., LPA

COUNSEL FOR APPELLEE, WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey

ADMINISTRATIVE LAW JUDGE:

Hon. Jonathan R. Weatherby

21