RENDERED: FEBRUARY 18, 2016
TO BE PUBLISHED

**Supreme Court of Kentucky** FINAL

2014-SC-000561-WC

DATE 3-10-16 Eliot Grow., H, D.C.

TRANE COMMERCIAL SYSTEMS                                        APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                    CASE NO. 2014-CA-000626-WC
WORKERS' COMPENSATION BOARD NO. 10-WC-89621


DELENA TIPTON;
HONORABLE THOMAS G. POLITES,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                      APPELLEES


**OPINION OF THE COURT BY JUSTICE KELLER**

**REVERSING**

The sole issue before this Court is whether Delena Tipton was entitled to

temporary total disability (TTD) income benefits after she had returned to work

for Trane Commercial Systems (Trane). The Administrative Law Judge (ALJ)

determined that she was not, a determination affirmed by the Workers'

Compensation Board (the Board), but reversed by the Court of Appeals. Having

reviewed the record, we reverse the Court of Appeals and reinstate the ALJ's

opinion and award.

**I. BACKGROUND.**

The underlying facts are not in dispute. Tipton began working at the

Trane commercial air conditioning manufacturing plant in 1990. On May 6,

2010, while working in the control department testing air conditioner units, Tipton fell and fractured her right patella. At that time, Tipton's job required her to frequently bend, squat, crawl, and kneel in order to connect various electrical components in the units for testing. Prior to performing this job, Tipton had worked assembling the units.

Following her injury, Tipton was off work until March 22, 2011, when she was released by her treating physician to return to sedentary work activity with no overtime. Tipton did return to work at a different job, assembling electrical-circuit boards and earning the same hourly rate of pay as she had before the injury. This job required no squatting, bending, kneeling, or crawling, and Tipton could perform it while either sitting or standing. On July 7, 2011, Tipton's physician released her to return to her pre-injury job duties, but continued the 8 hour-per-day restriction. Tipton, who did not believe she could perform her pre-injury job duties without significant problems, bid on and was permanently placed in the circuit board assembly job. At some point thereafter Tipton began working overtime again, and her hourly pay rate has increased.

Trane stopped paying Tipton TTD benefits when she returned to work. Before the ALJ, Tipton argued that she was entitled to those benefits through July 7, 2011, when her physician determined that she had reached maximum medical improvement (MMI) and released her to return to her pre-injury job. The ALJ denied Tipton's claim for the additional TTD benefits, finding that she had not reached MMI until July 7, 2011, but that her release and return to

2

"customary, non-minimal work" justified termination of TTD benefits when Tipton returned to work on March 22, 2011.

Tipton appealed the ALJ's award of TTD benefits to the Board, and the Board affirmed. Tipton then sought review before the Court of Appeals, which reversed the Board.[1] In doing so, the Court cited to its opinion in *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858 (Ky. App. 2009), for the proposition that an injured employee who has not reached MMI but has returned to work is entitled to receive TTD benefits until she returns to the "type of work [she] had performed . . . when injured or to other customary work." *Id.* at 876. Based on its review of the record, the Court determined that Tipton had not performed the circuit board assembly job prior to her injury; therefore, it concluded that her return to work on March 22, 2011 did not terminate her entitlement to TTD benefits. Trane appeals that determination and conclusion by the Court of Appeals.

## II. STANDARD OF REVIEW.

The issue we must decide is what the phrase "return to employment" as used in Kentucky Revised Statute (KRS) 342.0011(11)(a) means. Resolution of that issue requires us to interpret a statute, which we do *de novo*. *Saint Joseph Hosp. v. Frye*, 415 S.W.3d 631, 632 (Ky. 2013).

---

[1]Tipton also appealed the ALJ's failure to award her enhanced benefits under KRS 342.730(1)(c)1, the three-times multiplier, to the Board and the Court of Appeals, both of which affirmed the ALJ. Tipton has not filed a cross-appeal and is not pursuing that issue before us.

3

### III. ANALYSIS.

"'Temporary total disability' means the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment." KRS 342.0011(11)(a). Or, to put it positively, an employee is entitled to receive TTD benefits until such time as she reaches maximum medical improvement (MMI) or has improved to the point that she can return to employment. There is no dispute that Tipton reached MMI on July 7, 2011. However, the parties dispute whether Tipton reached the point that she could "return to employment" when she returned to work for Trane assembling circuit boards. The ALJ and the Board concluded that her return to work and return to employment occurred at the same time. As noted above, the Court of Appeals disagreed. For the reasons set forth below, we disagree with the Court of Appeals.

Initially, we note that KRS Chapter 342 ties entitlement to income benefits to an employee's employment status or ability to perform work in three pertinent areas: TTD, permanent total disability (PTD), and application of the three times multiplier in KRS 342.730(1)(c)1. Entitlement to PTD, in pertinent part, is tied to "a complete and permanent inability to perform any type of work," KRS 342.0011(11)(c). Entitlement to the three times multiplier is tied to the inability to "return to the type of work . . . performed at the time of injury." KRS 342.730(1)(c)1. However, for reasons that are unclear from the statute, entitlement to TTD is tied to an employee's ability to "return to employment."

4

KRS 342.0011(11)(a). Furthermore, while the legislature chose to define "work" – "providing services to another in return for remuneration on a regular and sustained basis in a competitive economy" KRS 342.0011(34) – it did not choose to define "employment." Since the adoption of these statutory provisions in 1996, the ALJs, the Board, and the Courts have been called upon to interpret and apply them numerous times.

Those interpretations have evolved over time, and we believe that the case law regarding PTD and the three times multiplier is clear, if not always applied correctly. To determine if an injured employee is permanently totally disabled, an ALJ must consider:

> factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions. A worker's ability to do so is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities. The definition of "work" clearly contemplates that a worker is not required to be homebound in order to be found to be totally occupationally disabled.

*Ira A. Watson Dep't Store v. Hamilton,* 34 S.W.3d 48, 51 (Ky. 2000) (citation omitted). To determine if an injured employee is capable of returning to the type of work performed at the time of injury, an ALJ must consider whether the employee is capable of performing "the actual jobs that the individual performed." *Ford Motor Co. v. Forman,* 142 S.W.3d 141, 145 (Ky. 2004).

On the other hand, the case law regarding what constitutes a "return to employment" is less clear both in explanation and application. We first

5

addressed "return to employment" in *Cent. Kentucky Steel v. Wise*, 19 S.W.3d 657 (Ky. 2000). Wise suffered a work-related left arm fracture on April 28, 1997. *Id.* at 658. His physician released him to return to work on July 11, 1997, with a left arm lifting restriction of five pounds; however, Wise did not return to work until September 30, 1997, and his physician stated that Wise reached MMI on October 28, 1997. *Id.* at 659. Faced with this evidence, the ALJ awarded Wise TTD benefits from April 28, 1997 through September 30, 1997. *Id.* Central Kentucky Steel appealed that award, arguing that Wise's entitlement to TTD benefits ended on July 11, 1997, when he was released to return to restricted work duties. *Id.* This Court disagreed, holding: "It would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the type that is customary or that he was performing at the time of his injury" and noting that "Wise did not return to work until the end of September." *Id.* Therefore, we concluded that sufficient evidence of substance supported the ALJ's award of TTD benefits through the date Wise returned to work. *Id.*

We next addressed return to employment in *Double L Const., Inc. v. Mitchell*, 182 S.W.3d 509 (Ky. 2005). Mitchell worked full-time as a carpenter for Double L and part-time as a janitor for Sky Brite. *Id.* at 511. While working for Double L, Mitchell suffered a left eye injury on January 6, 2003. *Id.* Mitchell underwent surgery, and, on March 3, 2003, his physician released him to return to work on light duty. *Id.* Mitchell then changed physicians, and underwent two additional surgeries. *Id.* Mitchell's second physician released

him to return to work as a carpenter on August 18, 2003. *Id.* During the litigation, Mitchell testified that he had not returned to work as a carpenter and that he had not missed any of his janitorial work. 182 S.W.3d at 512. The ALJ ordered Double L to pay Mitchell TTD benefits from the date of injury through August 18, 2003. *Id.* Double L argued that it should not have been required to pay any TTD benefits because Mitchell continued working in his part-time janitorial job. *Id.*

This Court disagreed. In doing so, the Court first held that, "unlike the definition of permanent total disability, the definition of TTD does not require a temporary inability to perform 'any type of work.'" *Id.* at 513. The Court then reiterated the holding from *Wise*, and concluded that "a work-related injury results in a temporary inability to perform the job in which it occurred." *Id.* at 515. Therefore, the Court affirmed the ALJs finding that Mitchell was entitled to TTD benefits until released to return to work as a carpenter. *Id.*

We next addressed return to employment in *FEI Installation, Inc. v. Williams*, 214 S.W.3d 313 (Ky. 2007). Williams, a working foreman for FEI, injured his elbow on August 24, 2003, and was restricted to one-handed duty until he underwent surgery on November 17, 2003. *Id.* at 315. Following surgery, Williams's physician took Williams off work completely until March 1, 2004, when he released Williams to return to full-duty work. *Id.* at 316. FEI paid, and the ALJ awarded, TTD benefits from the date of surgery through March 1, 2004. *Id.* The ALJ denied Williams's claim for TTD benefits from the date of injury to the date of surgery based on his conclusion that one-handed

work was within the scope of Williams's customary work. *Id.* at 317. This Court, like the Court of Appeals, concluded that "the overwhelming evidence, indicated that [Williams's] injury prevented him from performing his customary work" prior to surgery and that "[i]t was unreasonable to conclude that [Williams's] customary work came within his restrictions." 214 S.W.3d at 317.

The Court of Appeals then rendered *Bowerman*. Bowerman suffered a back injury on October 14, 2004, while working as a mechanic at Black Equipment. 297 S.W.3d at 861. He was able to return to light duty work and worked until April 22, 2005, when his physician took him off work and prescribed physical therapy. *Id.* Black Equipment did not pay for all of the recommended physical therapy and Bowerman sought interlocutory relief. *Id.* at 861-62. The ALJ held an interlocutory hearing on September 21, 2005, after which Bowerman filed an undated letter from Black Equipment indicating he had been discharged for failing to report for light duty work. *Id.* at 862. The ALJ entered an interlocutory opinion finding that Bowerman had not reached MMI and placing the claim in abeyance so that Bowerman could get additional medical treatment. *Id.* at 863. However, because she found that Bowerman was "able to work consistently under normal employment conditions," the ALJ denied Bowerman's claim for TTD during the period of abeyance. *Id.* In October 2006, Bowerman moved to remove the claim from abeyance, and the ALJ reopened proof. *Id.* at 864. The parties filed additional medical evidence, all of which covered the period of treatment after the interlocutory hearing. *Id.* The ALJ then rendered a final opinion in which she found, contrary to her

8

interlocutory opinion, that Bowerman had reached MMI on September 6, 2005, which was prior to the interlocutory hearing. 297 S.W.3d at 865. She then awarded Bowerman TTD benefits from April 27, 2005 through September 6, 2005; however, she did not award any TTD benefits for the period the claim was in abeyance. *Id.*

The Court of Appeals reversed the ALJ holding that, absent the introduction of new evidence, fraud, or mistake, the ALJ could not alter her interlocutory findings of fact. *Id.* at 867. The Court then held that "[t]he overwhelming weight of the lay and medical evidence adopted by the ALJ in her interlocutory opinion compelled an award of ongoing TTD benefits under proper application of KRS 342.0011(11)(a) and *Wise*." *Id.* at 875. In doing so, the Court noted that the ALJ specifically stated in her interlocutory order that she believed Bowerman's physician who had taken Bowerman off work on April 22, 2005 and had not released Bowerman to "the type of work he performed when injured or to other customary work" prior to when he determined Bowerman had reached MMI. *Id.* at 865, 876. Based on the preceding, the Court concluded that Bowerman was entitled to TTD benefits "during abatement of [his] claim." *Id.* 876.

The employee in only one of the preceding cases, *Williams*, worked while simultaneously being entitled to TTD. That case, which involved concurrent employment, is distinguishable on its face. The Court of Appeals in this case held that Tipton was entitled to TTD while she was working full-time for Trane and earning the same hourly rate. This holding by the Court of Appeals was

9

based on a misunderstanding of *Bowerman* and an understandable misinterpretation of what "return to employment" means.

As to *Bowerman,* the Court of Appeals stated that:

[E]ven though Bowerman had resumed working for Black Equipment as of October 25, 2004, his ability to perform the light duties assigned to him merely demonstrated that Bowerman was capable of returning to "some form of work," as opposed to the "type of work he had performed at Black when injured or to other customary work," and therefore, did not evince a "return to employment" within the meaning of KRS 342.0011(11)(a). Thus, *Bowerman,* indicates that light-duty assignments consisting of duties entirely different from pre-injury work duties cannot be considered a "return to employment" for the purpose of awarding TTD.

*Tipton v. Trane Commercial Sys.*, No. 2014-CA-000626-WC, 2014 WL 4197504, *6 (Ky. Ct. App. Aug. 22, 2014), *as modified* (Sept. 12, 2014). However, as noted above, the Court of Appeals only held that Bowerman was entitled to additional TTD for part of the period his claim was in abeyance, a period when he was not working. It did not hold that he was entitled to TTD for the period before his claim was placed in abeyance and during which he had worked.

As to "return to employment," we recently addressed this issue in *Livingood v. Transfreight, LLC,* 467 S.W.3d 249 (Ky. 2015). Livingood injured his shoulder on September 16, 2009, while operating a forklift for Transfreight. *Id.* at 252. He underwent two surgeries and was off work from November 11, 2009 through March 2, 2010, when he returned to work on light duty. *Id.* On October 5, 2010, Livingood underwent a third surgery and was off work again until December 13, 2010, when he returned to work without restrictions. *Id.* Transfreight discharged Livingood on December 23, 2010 because he had

10

bumped a forklift he was operating into a pole. 467 S.W.3d at 252. The ALJ denied Livingood's claim for TTD benefits during the time that he worked light duty. *Id.* at 253. In doing so, the ALJ noted that Livingood had performed the majority of his light duty tasks as part of his pre-injury regular-duty job. *Id.*

On appeal, Livingood, relying on *Wise* and *Double L Construction,* argued that he was entitled to additional TTD benefits while on light duty because he was not performing his customary work as a forklift operator. *Id.* at 254. We disagreed and affirmed the ALJ, noting that *Double L Construction* involved concurrent employment, an issue not present in Livingood's case, and that the employee in *Wise,* unlike Livingood, had not returned to work during the disputed period. *Id.* Furthermore, in an attempt to clarify the *Wise* line of cases, we reiterated our holding from *Advance Auto Parts v. Mathis,* No. 2004-SC-0146-WC, 2005 WL 119750 (Ky. Jan. 20, 2005), that " *Wise* does not 'stand for the principle that workers who are unable to perform their customary work after an injury are always entitled to TTD.'" *Id.* at *3.

We take this opportunity to further delineate our holding in *Livingood,* and to clarify what standards the ALJs should apply to determine if an employee "has not reached a level of improvement that would permit a return to employment." KRS 342.0011(11)(a). Initially, we reiterate that "[t]he purpose for awarding income benefits such as TTD is to compensate workers for income that is lost due to an injury, thereby enabling them to provide the necessities of life for themselves and their dependents." *Double L Const., Inc.,* 182 S.W.3d at 514. Next, we note that, once an injured employee reaches MMI

11

that employee is no longer entitled to TTD benefits. Therefore, the following only applies to those employees who have not reached MMI but who have reached a level of improvement sufficient to permit a return to employment.

As we have previously held, "[i]t would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the type [of work] that is customary or that he was performing at the time of his injury." *Central Kentucky Steel v. Wise*, 19 S.W.3d at 659. However, it is also not reasonable, and it does not further the purpose for paying income benefits, to pay TTD benefits to an injured employee who has returned to employment simply because the work differs from what she performed at the time of injury. Therefore, absent extraordinary circumstances, an award of TTD benefits is inappropriate if an injured employee has been released to return to customary employment, *i.e.* work within her physical restrictions and for which she has the experience, training, and education; and the employee has actually returned to employment. We do not attempt to foresee what extraordinary circumstances might justify an award of TTD benefits to an employee who has returned to employment under those circumstances; however, in making any such award, an ALJ must take into consideration the purpose for paying income benefits and set forth specific evidence-based reasons why an award of TTD benefits in addition to the employee's wages would forward that purpose.

Applying the preceding to this case, we must agree with the ALJ that Tipton was not entitled to TTD during the period in question. Tipton's

12

physician released her to perform light and sedentary work, which Trane provided for her. Additionally, although Tipton had not previously assembled circuit boards, she had assembled the air conditioning units and had tested them. Furthermore, she did not produce any evidence that assembling circuit boards required significant additional training or that it was beyond her intellectual abilities. In fact, it appears that Tipton was certainly capable of and wanted to perform the circuit board assembly job because she bid on and was awarded the job after her release to full-duty work. Thus, there was ample evidence of substance to support the ALJ's denial of Tipton's request for additional TTD benefits, and we reverse the Court of Appeals.

## IV. CONCLUSION.

For the foregoing reasons, the Court of Appeals is reversed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Donald Cameron Walton III
Ward, Hocker & Thornton, PLLC


COUNSEL FOR APPELLEE, DELENA TIPTON:

Larry Duane Ashlock
Morgan & Morgan