RENDERED: APRIL 28, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0227-WC

APPLE VALLEY SANITATION, INC.                                      APPELLANT


V.

ON APPEAL FROM THE COURT OF APPEALS
NO. 2020-CA-0976
WORKERS' COMPENSATION CASE NOS.
17-WC-85280 AND 19-WC-00205


JON STAMBAUGH;                                                      APPELLEES
HONORABLE RICHARD NEAL,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING</u>**

This case is before the Court on appeal as a matter of right[1] by Apple

Valley Sanitation, Inc. of a workers' compensation award.  The Court of

Appeals' opinion affirmed the Administrative Law Judge's award of permanent

partial disability benefits to Jon Stambaugh.  Apple Valley argues the Court of

Appeals erred in affirming the ALJ's application of the three-multiplier to the

separate weekly rates of benefits awarded to Stambaugh for two separate work-

related injuries that occurred 85 days apart.  We find no error, and we affirm

the Court of Appeals.

---

[1] Ky. Const. § 115.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Stambaugh worked for Apple Valley for 23 years as a garbage truck driver and loader. While at work on April 17, 2017, Stambaugh twisted his right knee when exiting a garbage truck. The record provides no evidence or assertion that Stambaugh ceased working because of the April 17 injury.

The day after the work-related injury, Stambaugh presented to Tracy Hamilton, APRN, reporting right-knee pain and swelling. Hamilton noted obvious effusion of the right knee, prescribed medications, and referred Stambaugh to Dr. Donald Arms, an orthopedic surgeon. She recommended that Stambaugh work on light duty. Over the course of several appointments, Hamilton diagnosed Stambaugh with hypogonadism, chronic low-back pain, degeneration of lumbar intervertebral disc, back pain, shoulder pain, and bilateral knee pain.

On April 25, 2017, Stambaugh presented to Dr. Arms, who took x-rays of Stambaugh's knees, showing bilateral degenerative changes about the knees. Dr. Arms recommended Stambaugh continue modified work duty; wear a brace; and limit kneeling, squatting, climbing, and prolonged walking. On May 30, 2017, Dr. Arms released Stambaugh to resume his regular work duties.

On July 11, 2017, Stambaugh experienced another injury while working for Apple Valley. This time, Stambaugh was diagnosed as having sustained injuries to his lumbar spine and left knee over the course of his work for Apple Valley through cumulative, repetitive trauma. Both his last day of work and

2

last day of exposure to the cumulative trauma was July 11, 2017. Stambaugh has neither worked nor applied for work since that date.

Following his July 11 injury, Stambaugh again presented to Dr. Arms. At that time, Dr. Arms diagnosed Stambaugh with degenerative spondylolisthesis, morbid obesity, femoral acetabular impingement, and degeneration of lumbar intervertebral disc. Dr. Arms recommended Stambaugh cease regular work duties and commence desk duties only.

On October 9, 2018, Stambaugh presented to Dr. Ira Potter for treatment of work-related injuries sustained to his knees, back, and shoulders. Over the course of the next year, Dr. Potter diagnosed Stambaugh with low-back pain, degenerative joint disease, joint pain in both shoulders, osteoarthritis, impingement syndrome of both shoulders, and obesity. On November 5, 2018, Dr. Potter concluded that Stambaugh was totally disabled from work. But, on February 19, 2019, after Stambaugh was prescribed various medications, Dr. Potter suggested that Stambaugh could return to work with extensive restrictions.

At his attorney's request, Stambaugh presented to Dr. Bruce Guberman on November 28, 2018, for an independent medical evaluation (IME). Dr. Guberman diagnosed Stambaugh with chronic post-traumatic strain and aggravation of dormant degenerative changes of the right knee occurring on April 17, 2017; cumulative trauma to the left knee; cumulative-trauma injury to both shoulders; cumulative-trauma injury to the cervical spine; and cumulative-trauma injury to the lumbar spine. Dr. Guberman stated that

3

Stambaugh had reached maximum medical improvement (MMI) by November 28, 2018.

Dr. Guberman assigned Stambaugh a 4% whole-person impairment for his right-knee injury on April 17, 2017, and a 27% whole-person impairment for his cumulative-trauma injuries.[2] Dr. Guberman concluded that Stambaugh lacked the physical capacity to perform the job that he was performing at the time of his injuries.

On February 22, 2019, Stambaugh filed two claims for workers' compensation benefits: one for his injury on April 17 and one for his injury on July 11. The two claims were consolidated.

On May 21, 2019, Stambaugh presented to Dr. Daniel Primm for an IME at Apple Valley's request. Dr. Primm diagnosed Stambaugh with right-knee strain or sprain from the April 17 injury,[3] primary osteoarthritis in both knees, rotator cuff tendonitis impingement syndrome of both shoulders, and age-related mechanical neck- and low-back pain with no evidence of radiculopathy. Dr. Primm stated that Stambaugh's right knee had reached MMI and his other injuries and symptoms did not exceed the expected condition of a male of Stambaugh's age. He assigned Stambaugh a 5% whole-person impairment rating for the right-shoulder injury and a 6% whole-person impairment rating

---

[2] Specifically, Dr. Guberman assigned an 8% impairment for the right knee, 2% impairment for the right shoulder, 7% impairment for the left shoulder, 5% impairment for the cervical spine, and 8% impairment for the lumbar spine.

[3] On the date of Dr. Primm's examination of Stambaugh, Dr. Primm concluded that the right knee strain or sprain was resolved and no permanent injury sustained.

4

for the left-shoulder injury.  Dr. Primm concluded that Stambaugh had the physical capacity to return to the job he was performing at the time of his injury.

On June 11, 2019, Dr. Russell Travis performed a review of Stambaugh's treatment records.  Dr. Travis assigned Stambaugh a 0% impairment rating regarding his cervical-spine injury and a 0% impairment rating regarding his thoracic-spine injury.  He concluded that Stambaugh had no cervical, thoracic, or lumbar degenerative changes, nor shoulder or knee arthritic conditions greater than those expected in a man of Stambaugh's age.

The ALJ ultimately issued an Opinion, Order and Award, awarding Stambaugh benefits for both his April 17 and July 11 injuries.  The ALJ found that Stambaugh met his burden of proof of work-related injuries regarding his April 17 acute right-knee injury and his July 11 cumulative traumas to his left knee and lumbar spine.[4]

The ALJ awarded Stambaugh permanent partial disability benefits, finding that he had a 4% whole-person impairment as a result of his April 17 injury and a 14% whole-person impairment as a result of his July 11 injuries.[5] The ALJ applied the three-multiplier from KRS[6] 342.730(1)(c)1 to the benefits

---

[4] The ALJ also concluded that Stambaugh failed to meet his burden of proof with regard to his alleged cervical spine and shoulder injuries.  This finding is not contested in this appeal.

[5] Upon Stambaugh's Petition for Reconsideration, the ALJ issued a revised Order stating that the proper impairment rating for Stambaugh's cumulative traumas was 15% rather than 14%.

[6] Kentucky Revised Statutes.

5

for both Stambaugh's April 17 and July 11 injuries, finding that Stambaugh lacked the physical capacity to return to the type of work he performed at the time of either injury.

Apple Valley appealed the ALJ's order applying the three-multiplier to both Stambaugh's benefits awards. The Workers' Compensation Board affirmed the decision of the ALJ. The Court of Appeals affirmed the decisions of the Board and the ALJ. For the following reasons, we affirm the Court of Appeals' decision.

## II.  STANDARD OF REVIEW

In workers' compensation cases, this Court's standard of review depends upon whether the issue on appeal is a question of law or fact. In reviewing an ALJ's decision on a question of law or interpretation and application of a law to the facts at hand, our standard of review is de novo.[7] With regard to questions of fact, "[t]he ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence."[8]

This Court's review of an ALJ's determination of an injured employee's retained capacity and application of a multiplier to that employee's benefits award is a question of fact based upon the medical and lay evidence provided.[9] In a case, like the present one, in which the party with the burden of proof was

---

[7] *Ford Motor Co. v. Jobe,* 544 S.W.3d 628, 631 (Ky. 2018).

[8] *LKLP CAC Inc. v. Fleming,* 520 S.W.3d 382, 386 (Ky. 2017) (internal citation omitted).

[9] *Carte v. Loretto Motherhouse Infirmary,* 19 S.W.3d 122, 126 (Ky. App. 2000).

successful before the ALJ, the only issue we consider on appeal is whether the ALJ's conclusion is supported by substantial evidence.[10]  And we will reverse the ALJ's decision only if we find it to be unsupported by substantial evidence of probative value.[11]

### III.  ANALYSIS

KRS 342.730(1)(c)1 provides that, if, due to a work-related injury, an "employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for [PPD] shall be multiplied by three (3) times . . . ."  This provision is intended to compensate an injured worker who has a permanent alteration to his ability to labor and earn money due to his injury.[12]  The determination of both the permanence of an employee's injury and the effect of that injury on the employee's capacity to return to work is made by the ALJ based on the evidence presented.

Apple Valley's primary argument on appeal is that the three-multiplier cannot be applied to successive injury claims if the employee had no significant change in job duties between those two injuries, citing *Trane Commercial Systems v. Tipton* for that proposition.[13]  Apple Valley contends that the application of the three-multiplier to Stambaugh's benefits award for his April 17 injury precludes its application to the benefits award for his July 11 injury,

---

[10] *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999).

[11] *Wilkerson v. Kimball Int'l, Inc.*, 585 S.W.3d 231, 236 (Ky. 2019).

[12] *Fawbush v. Gwinn*, 103 S.W.2d 5, 12 (Ky. 2003).

[13] 481 S.W.3d 800 (Ky. 2016).

reasoning that Stambaugh cannot, for a second time, lose the physical capacity to return to his job. Apple Valley provides as dispositive evidence of this fact Stambaugh's return to his usual job duties during the period between his April 17 and July 11 injuries.

We find neither evidence nor precedent to support Apple Valley's position. KRS 342.730(1)(c)1 concerns whether an employee has the physical capacity *at the time of the benefits hearing* to perform the type of work performed pre-injury. The ALJ concluded, based upon the evidence, and in his discretion, that both the April 17 and July 11 injuries individually precluded Stambaugh from performing the work he performed at the time of each injury. Such a decision is appropriately made with the complete knowledge of the severity of Stambaugh's injuries and the continued disability he experiences.

Additionally, we find no support for Apple Valley's position in *Trane Commercial Systems*.[14] There, this Court considered the impact of an employee's limited post-injury return to work on an award of temporary total disability benefits (TTD) to that employee.[15] We concluded that an employee is only capable of "returning to work" for purposes of ending entitlement to TTD benefits when that employee is capable of performing the actual jobs previously performed at the time of injury.[16] Such a holding simply is not relevant to the case at hand. Stambaugh continued working after his April 17 injury with

---

[14] *Id.*

[15] *Id.* at 802.

[16] *Id.* at 803-04.

minor accommodations, eventually returning to full-duty, and he did not return to work at all after his July 11 injury. Upon consideration of the medical and lay evidence presented, the ALJ concluded that Stambaugh presently lacks the capability to perform the sort of work he did at the time of his injuries. Because Stambaugh has not returned to work since his July 11 injury, *Trane Commercial Systems* has no bearing on our analysis.

Apple Valley has failed to identify any relevant case law that addresses the impact of an employee's relatively brief return to work post-injury as preclusive of the application of the three-multiplier to the benefits awarded for that injury.[17] Finding no basis in law under which we may entertain Apple Valley's argument, we find application of the three-multiplier to be within the sound discretion of the ALJ.

In the alternative, Apple Valley alleges that the ALJ combined evidence from Stambaugh's two injuries to conclude that the three-multiplier was applicable to both injuries. Apple Valley cites *Plumley v. Kroger, Inc.* for the proposition that successive injury claims must be decided separately and the evidence for each claim must be weighed individually.[18]

---

[17] Without providing exposition on the topic, both this Court and the Court of Appeals have affirmed decisions by ALJs to apply the three-multiplier under circumstances analogous to those in Stambaugh's case: *Morgan v. Bluegrass Oakwood, Inc.*, ___S.W.3d___, No. 2019-CA-000423-WC, 2019 WL 3367190 (Ky. App. July 26, 2019) *aff'd*, No. 2019-SC-000490-WC, 2021 WL 1679311 (Ky. Apr. 29, 2021); *Ford Motor Co. (LAP) v. Jones*, No. 2016-CA-001588-WC, 2017 WL 729164 (Ky. App. Feb. 24, 2017); *Rock Drilling, Inc. v. Howell*, No. 2012-CA-000490-WC, 2012 WL 3642476 (Ky. App. Aug. 24, 2012) *aff'd*, No. 2012-SC-000586-WC, 2013 WL 4680489 (Ky. Aug. 29, 2013); *Adkins v. Pike Cnty. Bd. of Educ.*, 141 S.W.3d 387 (Ky. App. 2004).

[18] 557 S.W.3d 905, 914-16 (Ky. 2018).

In *Plumley*, an employee experienced four work-related injuries, in 1998, 2006, 2009, and 2011, respectively. After each injury, the employee received treatment and returned to work in generally the same capacity. When the employee eventually brought a claim for benefits for the 2006, 2009, and 2011 injuries, the ALJ assigned each an impairment rating and applied a one-multiplier to the 2006 and 2009 injuries and the three-multiplier to the 2011 injury, finding that only after the 2011 injury did the employee lose the capacity to return to the same type of work performed at the time of the injuries. On appeal, this Court affirmed the ALJ, finding that the employee received no restrictions after the 2006 and 2009 injuries that were not already in place because of his 1998 injury, so after the 2006 and 2009 injuries, he was able to return to the type of work he performed at the time of the injury, precluding application of the three-multiplier.

Apple Valley contends that, considering *Plumley*, this Court is required to reverse the ALJ's application of the three-multiplier to both Stambaugh's benefits awards. But we find *Plumley* distinguishable from the case at hand. Unlike the employee in *Plumley*, Stambaugh returned to work for only 12 weeks after his April 17 injury, and for six of those weeks he was restricted to light duty. We do not find that Stambaugh's continuation of work between his April 17 and July 11 injuries constitutes a "return to work" that reflects the capacity to continue the type of work performed at the time of the injury for the indefinite future.

10

Additionally, we find that the ALJ fulfilled his duty in this case by providing separate analyses and making separate findings regarding the successive injuries, even stating, "[T]he Plaintiff lacks the physical capacity to return to his job due to both the April 17, 2017, acute injury to the right knee, and the July 11, 2017, cumulative trauma injury, individually and independently."

The ALJ's determination that Stambaugh cannot return to his pre-injury job because of his April 17 right-knee injury is supported by substantial evidence. Stambaugh suffers from chronic post-traumatic strain and aggravation of dormant degenerative changes of the right knee, as noted by Dr. Guberman, which would reasonably prevent him from sitting or standing for long periods, kneeling, squatting, and crawling. The record clearly states that the performance of Stambaugh's pre-injury job duties involves continuous walking and climbing in and out of the garbage truck. Ultimately, Dr. Guberman found that Stambaugh could not perform his pre-injury work tasks as a result of his April 17 injury. So the ALJ's finding that Stambaugh's benefit award for his April 17 injury is eligible for application of the three-multiplier is supported by substantial evidence.

We also find that the ALJ's determination that Stambaugh cannot return to his pre-injury job because of his July 11 cumulative-trauma injury is supported by substantial evidence. Stambaugh suffers from degenerative disc disease and degenerative joint disease of the lumbar spine, as well as degenerative changes to the left knee, as noted by Dr. Guberman and Dr.

11

Potter, which would reasonably prevent him from using his arms and legs repetitively and from carrying or pushing objects over 25 pounds (or 5-10 pounds frequently). The record includes evidence that Stambaugh's pre-injury job involves lifting bags of garbage ranging from 10 to 100 pounds each and repetitively climbing in and out of the garbage truck. Dr. Guberman found that Stambaugh could not perform his pre-injury tasks because of his July 11 injury. Thus, the ALJ's finding that Stambaugh's benefit award for his July 11 injury is eligible for application of the three-multiplier is supported by substantial evidence.

## IV. CONCLUSION

We find that the ALJ's award in this case was supported by substantial evidence, so we affirm the Court of Appeals.

All sitting. All concur.

12

COUNSEL FOR APPELLANT:

W. Barry Lewis
Lewis and Lewis Law Offices


COUNSEL FOR APPELLEE:

John Earl Hunt


ADMINISTRATIVE LAW JUDGE:

Hon. Richard Neal


WORKERS' COMPENSATION BOARD:

Michael W. Alvey
Chairman