RENDERED:  AUGUST 15, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0296-WC

THE JOB CENTER                                    APPELLANT


v.                  PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. 2022-WC-98693


AMY GRIFFITHS; HONORABLE
THOMAS G. POLITES,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                     APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  The Job Center petitions for review of an opinion of the

Workers' Compensation Board which affirmed the Administrative Law Judge's

(ALJ) opinion and orders awarding Amy Griffiths temporary total disability (TTD)

benefits until she reached maximum medical improvement (MMI). The Job Center argues that, under Kentucky Revised Statutes (KRS) 342.0011(11)(a), the TTD benefits should cease on the date it offered Griffiths accommodated employment. Upon careful review, we affirm the opinion of the Board.

## FACTUAL AND PROCEDURAL BACKGROUND

The Job Center is a temporary employment agency. On November 21, 2021, it placed Griffiths with DHL as a mail sorter. She was required to lift bins of sorted packages from a conveyor and replace them with empty bins. The job was fast-paced and involved heavy lifting, standing, and jogging for the entire shift. She earned $24 per hour, plus overtime pay and bonuses. According to Griffiths, she consistently worked more than fifty hours per week.

Griffiths, who was forty-eight when she started working at DHL, holds associate's degrees in business administration, criminal justice/paralegal studies, and applied farrier science. She has worked with horses throughout her life, including as an exercise rider until 2014. Her other employment experiences included working as a blackjack dealer, a photographer, and a racetrack horse stall superintendent.

On December 19, 2021, after working at DHL for about one month, Griffiths lifted a heavy skid and felt a shock in her hand. She dropped the skid, which fell and fractured her right big toe. She received medical benefits and

permanent partial disability (PPD) benefits based on a 4 percent impairment rating. She received TTD benefits beginning on December 21, 2021. The ALJ found that she reached MMI on August 16, 2022.

In April 2022, Griffiths worked on a farm for two days, helping load unbroken foals and their mothers into trailers and directing the grooms to manage the horses. She reported that the foals were very difficult to load, and she often got run over by them during the loading process. She was on her feet all day. She was wearing a walking boot for her toe injury at that time but could not wear it in the mud. Instead, she wore her son's boots, which were two sizes too large for her, to keep her feet dry. She was paid $800 to do the job.

The Job Center sent Griffiths three offers of work, on December 23, 2021; March 15, 2022; and April 8, 2022. The Job Center stipulated that the first letter was sent to the wrong address. The March 15, 2022 letter offered her a job at The Job Center, answering phones, making recruiting calls, and filing new hire packets. Griffiths testified that she did not receive the letter because she had become homeless and was no longer living at her old address. The letter, sent on April 8, 2022, offered her a job at the Christian Life Center earning $22 per hour for thirty-five hours per week. Her duties would include distributing food at the food pantry, discarding expired food, occasionally sweeping, and wiping down

shelves.  Griffiths received this letter after it was resent via certified mail, but she did not accept the job offer.

Griffiths testified that she returned to regular full-time employment in August 2022, working on the night watch at a horse farm for $16 per hour.  This involved driving the company truck throughout the night to make sure the horses were safe and receiving their food and medications.  In May 2023, she moved to Tennessee and began sedentary employment as a photographer.  She earns an average of $500 per week.

The ALJ ruled that Griffiths was entitled to receive TTD benefits for the entire period from December 21, 2021, immediately following her injury, to August 16, 2022, the date of MMI.  The Job Center argued that its offers of accommodated employment to Griffiths, particularly the job at the Christian Life Center, effectively enabled her to return to work, and consequently, her TTD benefits should have terminated at that time.  The ALJ disagreed, finding that because the work offered was minimal and not customary, she was entitled to receive TTD benefits until MMI.  The Board agreed and affirmed the award of TTD benefits until August 16, 2022.  This petition for review by The Job Center followed.

## STANDARD OF REVIEW

When the Court of Appeals reviews a decision of the Board, "we reverse only where it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice." *GSI Commerce v. Thompson*, 409 S.W.3d 361, 364 (Ky. App. 2012) (citing *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

"KRS 342.285 designates the ALJ as the finder of fact." *Ak Steel Corp. v. Adkins*, 253 S.W.3d 59, 64 (Ky. 2008) (citation omitted). As such, the ALJ "has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *Id.* (citation omitted). Additionally, "an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Laboratory Corp of America v. Smith*, 701 S.W.3d 228, 233 (Ky. 2024) (citation omitted).

## ANALYSIS

"Temporary total disability" is defined in the Workers' Compensation Act as "the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment[.]" KRS 342.0011(11)(a). Thus, "an

employee is entitled to receive TTD benefits until such time as she reaches maximum medical improvement (MMI) or has improved to the point that she can return to employment." *Trane Commercial Systems v. Tipton*, 481 S.W.3d 800, 803 (Ky. 2016).

The Kentucky Supreme Court has provided the following guidelines to determine if an employee has reached a level of improvement "that would permit a return to employment":

> [I]t would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the type [of work] that is customary or that he was performing at the time of his injury." *Central Kentucky Steel v. Wise*, 19 S.W.3d [657, 659 (Ky. 2000)]. However, it is also not reasonable, and it does not further the purpose for paying income benefits, to pay TTD benefits to an injured employee who has returned to employment simply because the work differs from what she performed at the time of injury. Therefore, absent extraordinary circumstances, an award of TTD benefits is inappropriate if an injured employee has been released to return to customary employment, *i.e.* work within her physical restrictions and for which she has the experience, training, and education; *and* the employee has actually returned to employment.

*Id*. at 807.

The ALJ found that the accommodation job offers from The Job Center did not preclude Griffiths from receiving TTD because they were for minimal work that was not customary. He found that she was being actively treated from March 2022 until August 2022, and that The Job Center itself had

-6-

acknowledged she had not reached MMI and would not be able to return to her customary work in its letter of March 15, 2022, which was titled "Light Duty job offer" and stated, "you have not yet reached MMI and cannot return full time to your former position." In additional findings requested by The Job Center, the ALJ characterized Griffiths' two days of work with the horses in April 2022 as nothing more than an unsuccessful attempt to return to work, which did not terminate her entitlement to TTD benefits. In regard to the job offer at the Christian Life Center, the ALJ stated:

> [T]he accommodated job offer is not the type of work that Plaintiff performed for the Defendant nor was it customary for her but appears to be nothing more than minimal work or make-work, which is insufficient to preclude an award of TTD. Plaintiff testified at her deposition that she had previous work experience as an exercise rider, photographer, and casino dealer and the accommodated job offer is not in any of these areas.

The Job Center argues that the ALJ's analysis was too narrow because he considered "customary employment" to require a return to precisely the type of jobs Griffiths had performed in the past, rather than a job within her intellectual capabilities without a need for extensive training. It contends that under *Trane*, *supra*, the job duties at the Christian Life Center were sufficiently similar to Griffiths' past job duties to constitute a return to customary employment.

In *Trane*, the employee worked testing air conditioners, which required her to frequently bend, squat, crawl, and kneel. Following a workplace

injury, she was off work for several months and then released by her treating physician to return to sedentary work with no overtime. She returned to work with her employer at a different job, assembling circuit boards, which did not require any squatting, bending, kneeling, or crawling, and could be performed standing up or sitting down. She was permanently placed in this job, began working overtime again and her hourly pay increased. The Kentucky Supreme Court affirmed the ALJ's ruling that she was not entitled to recover TTD benefits after her return to work, stating:

> Tipton's physician released her to perform light and sedentary work, which Trane provided for her. Additionally, although Tipton had not previously assembled circuit boards, she had assembled the air conditioning units and had tested them. Furthermore, she did not produce any evidence that assembling circuit boards required significant additional training or that it was beyond her intellectual abilities. In fact, it appears that Tipton was certainly capable of and wanted to perform the circuit board assembly job because she bid on and was awarded the job after her release to full-duty work. Thus, there was ample evidence of substance to support the ALJ's denial of Tipton's request for additional TTD benefits.

*Trane*, 481 S.W.3d at 807.

The Job Center argues that accepting the job at the Christian Life Center would not have required Griffiths to undergo any additional training and that it was similar to her job with DHL, in that it was relatively unskilled and required sorting and distributing goods. It further contends that Griffiths bore the

-8-

burden of proving she was entitled to the TTD benefits, but produced no evidence to demonstrate that the job offer was not legitimate and that the burden of proving the job offer was "make work" should remain with Griffiths.

"It has long been the rule that the claimant bears the burden of proof and the risk of nonpersuasion before the fact-finder with regard to every element of a workers' compensation claim." *Magic Coal Co. v. Fox*, 19 S.W.3d 88, 96 (Ky. 2000). But because the ALJ's decision favored Griffiths, the person with the burden of proof, her "only burden on appeal is to show that there was some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did." *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986).

There is substantial evidence in the record supporting the ALJ's finding that the nature of the job at the Christian Life Center was not customary. Griffiths had previously worked with horses, and as a horse stall superintendent, as a photographer, and as a blackjack dealer in a casino. It was well within the ALJ's discretion to assess the quality and character of the proof and conclude that the job at the food bank was simply not sufficiently similar to her prior employment to constitute customary employment.

The Job Center further claims that the ALJ should have offered legal authority to support his finding that the job offer was "make work," and contends

that this finding was insulting because the job consisted of providing food and other necessities for people in need. The Job Center contends the job was full-time employment consistent with Griffiths' prior work hours, paid $22 per hour, and that there was no indication she would be "twiddling her thumbs" while at work. On the other hand, however, there was evidence in the record that Griffiths worked fifty hours per week at DHL, earning $24 per hour in a fast-paced environment. The nature of the work at the food bank, the hours, and the pay were sufficiently different from her prior employment to support the ALJ's finding.

Finally, The Job Center argues that the award of TTD to Griffiths undermines the purpose of restoring the claimant as quickly as possible to a condition of self-support and employment and permits a "minimally injured" worker to simply refuse a job offer and still receive benefits. This argument is without merit because there was evidence of substance to support the ALJ's finding that the offered employment was not customary and did not compel a return to employment or termination of TTD benefits.

## CONCLUSION

Because the Board did not overlook or misconstrue controlling law or flagrantly err in evaluating the evidence in affirming the ALJ's ruling, *see GSI Commerce*, *supra*, its opinion is affirmed.

-10-

ALL CONCUR.


BRIEF FOR APPELLANT:

Robert F. Ferreri
David A. Shearer, III
Louisville, Kentucky

BRIEF FOR APPELLEE AMY GRIFFITHS:

Daniel J. Urbon
Covington, Kentucky