# IMPORTANT NOTICE

## "NOT TO BE PUBLISHED OPINION"

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED" PURSUANT TO RULE OF APPELLATE PROCEDURE (RAP) 40(D). THIS OPINION SHALL NOT BE CITED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

UNDER RAP 41, UNPUBLISHED OPINIONS OF KENTUCKY APPELLATE COURTS RENDERED AFTER JANUARY 1, 2003, THAT ARE FINAL UNDER RAP 40(G), MAY BE CITED BY A PARTY FOR CONSIDERATION BY A COURT IF THERE IS NO PUBLISHED OPINION THAT ADEQUATELY ADDRESSES THE POINT OF LAW BEING ARGUED BY A PARTY.

IF AN UNPUBLISHED OPINION IS CITED FOR CONSIDERATION BY A COURT THE OPINION SHALL BE SET OUT AS AN UNPUBLISHED OPINION IN THE DOCUMENT IN WHICH THE UNPUBLISHED OPINION IS CITED.

RENDERED: JUNE 25, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0372-WC

THE JOB CENTER                                                    APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2025-CA-0296
WORKERS' COMPENSATION NO. WC-22-98693

AMY GRIFFITHS; HONORABLE                              APPELLEES
THOMAS G. POLITES,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD
OF KENTUCKY

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

The Job Center, a temporary employment agency, appeals from the opinion of the Court of Appeals affirming the Workers' Compensation Board's ("Board") opinion. The Board affirmed the Administrative Law Judge's ("ALJ") award of temporary total disability ("TTD") benefits to Amy Griffiths ("Griffiths") until she reached maximum medical improvement ("MMI") because she was not released to return to customary employment. For the reasons below, we affirm the opinion of the Court of Appeals.

Griffiths began working for The Job Center and was placed at DHL on November 22, 2021, about a month prior to her injury. On December 19, 2021, Griffiths suffered a fracture to her right big toe during her shift. Griffiths was a

sorter, which required her to sort thousands of pieces of mail in minutes by squatting to lift bins off a conveyor belt, jogging up and down the line carrying them, and stacking them on pallets. Griffiths was injured when she lifted an empty skid weighing 80 pounds and felt a jolt in her hand, causing her to drop the skid onto her right big toe. She continued working until her break, an hour and a half later, when her supervisor told her to get it checked. She then went to the emergency room.

At the emergency room, Griffiths was treated for a big toe fracture and released with a walking boot and crutches. She was advised to follow up with a podiatrist. Griffiths sought treatment from Concerta from December 20-28, 2021; Dr. Degnore (Tracy Robinson, PA-C) at Baptist Health Medical Group Orthopedics & Sports Medicine from January 14-February 3, 2022; and Dr. Jason Harrod at Bluegrass Orthopedics from February 28-August 16, 2022.

While treating with Dr. Degnore and Robinson, PA-C, x-rays taken on January 14, 2022, indicated her toe was still broken. On January 31, 2022, Robinson, PA-C, released Griffiths to return to work with restrictions while still in a walking boot. The Job Center sent her back to work at DHL. However, DHL did not allow her to work because closed-toe shoes were mandatory, and she was still in a boot and using crutches. The Job Center terminated her benefits on March 17.

On February 28, 2022, Dr. Harrod assigned Griffiths light-duty restrictions at her initial evaluation, which remained in place until August 16, 2022. She was referred to physical therapy for treatment from March 24, 2022,

2

through May 3, 2022. Dr. Harrod reevaluated Griffiths on May 3, 2022, which indicated her subjective pain had changed very little and her condition had only improved slightly. On June 21, 2022, Dr. Harrod x-rayed Griffiths' toe. The x-ray showed complete healing, and she was referred for a functional capacity evaluation, which she had on July 20, 2022. Dr. Harrod advised that if The Job Center was unable to accommodate her light-duty restrictions, she must remain off work until her next appointment. At a follow-up visit on August 16, 2022, Dr. Harrod released her from his care with medium work duty restrictions. He also completed a permanent partial impairment rating lower extremity form and placed her at MMI on that date.

The Job Center sent four accommodated job offer letters to Griffiths. It stipulated that it sent its initial December 23, 2021, letter to the wrong address. The Job Center sent letters dated March 15, 2022, and April 8, 2022, which Griffiths testified she did not receive. Griffiths testified that she received the April 19, 2022, offer letter. Griffiths did not accept any of the offers and never performed any additional work for DHL.

The March 15 letter offered Griffiths a light-duty job at The Job Center's Florence office. The responsibilities included answering the phone, making recruiting calls, greeting associates, preparing new-hire packets, filing as needed, handling associate questionnaires, and other administrative duties. In the letter, the Job Center acknowledged that she had been released to light-duty work, had not reached MMI, and could not return to her former position

3

full-time. We note that the ALJ cited language from this letter to support its award of TTD benefits, a point discussed further in our analysis.

The April 8 and April 19 offers offered the same accommodated job at the Christian Life Center's food pantry. The job would have required Griffiths to assist in distributing donated food items to guests, discarding expired food, and occasionally cleaning.

The ALJ was persuaded by Griffiths' testimony that she only received the April 19 offer letter, so it only considered whether the food pantry job would have constituted customary employment. Thus, The Job Center's argument on appeal appears to solely concern the ALJ's extension of TTD benefits beyond Griffiths' receipt of the April 19 letter offering the food pantry job.

Pertinent to this appeal, the ALJ weighed the evidence and was persuaded by medical records from Griffiths' treatment with Dr. Harrod. Based on those records, the ALJ found that Dr. Harrod released Griffiths to return to work with light-duty restrictions on June 21, 2022, and that on August 16, 2022, Dr. Harrod released her to return to work with permanent medium work-duty restrictions. The ALJ awarded Griffiths TTD benefits beginning on December 21, 2021, until she reached MMI on August 16, 2022. The Board and Court of Appeals upheld the ALJ's award of TTD benefits through this period. This appeal followed.

## STANDARD OF REVIEW

In reviewing a Board opinion, the Court of Appeals may only correct the Board when the "Court perceives the Board has overlooked or misconstrued

4

controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Lexington Fayette Urban Cnty. Gov't v. Gosper*, 671 S.W.3d 184, 199 (Ky. 2023) (quoting *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 688 (Ky. 1992)). The Court of Appeals reviews legal questions de novo. The Court of Appeals reviews questions of fact under the clearly erroneous standard. *Id.* When the ALJ's decision "favors the person with the burden of proof, his only burden on appeal is to show that there was some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did." *Id.*

Though Section 115 of the Kentucky Constitution provides a right to appeal workers' compensation claims to this Court, our review is "limited to the determination of 'new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude.'" *Gosper*, 671 S.W.3d at 200. We "will not simply 'third guess' the decisions of the Board and the Court of Appeals upon the same evidence." *Id.*

## ANALYSIS

The central issue on appeal is whether Griffiths was entitled to TTD benefits when she was released to return to light-duty work and The Job Center offered her an accommodated job prior reaching MMI.[1] For the reasons

---

[1] The Job Center makes several sub-arguments to support its position, which we decline to address individually, as they are resolved by our overarching analysis.

5

below, this appeal presents an issue of fact, so it is unnecessary to reconsider our precedent. As such, the Court of Appeals correctly reviewed this case for whether substantial evidence existed to support the ALJ's award of TTD benefits to Griffiths from the date of her injury until she reached MMI.

To be entitled to TTD benefits under KRS 342.0011(11)(a), the claimant "must satisfy a two-prong test: (1) [s]he must not have reached maximum medical improvement ("MMI"); and (2) [s]he must not have reached a level of improvement that would permit [her] return to employment." *Livingood v. Transfreight, LLC*, 467 S.W.3d 249, 253 (Ky. 2015). It is well established that "once an injured employee reaches MMI that employee is no longer entitled to TTD benefits." *Trane Com. Sys. v. Tipton*, 481 S.W.3d 800, 807 (Ky. 2016). However, though the statute defines "work," it does not define "employment." *Id.* at 803. Prior case law did not clearly interpret what constitutes a "return to employment" under the statute. *Id.* at 804. In *Tipton*, this Court clarified "what standards the ALJs should apply to determine if an employee 'has not reached a level of improvement that would permit a return to employment'" under KRS 342.0011(11)(a). *Id.* at 807. This Court held ALJs must apply the following two standards in making this determination: "absent extraordinary circumstances, an award of TTD benefits is inappropriate if an injured employee has been released to return to customary employment, *i.e.,* work within her physical restrictions and for which she has the experience, training, and education; *and* the employee has actually returned to employment." *Id.* at 807; *Davis v. Blendex Co.,* 626 S.W.3d 523, 531 (Ky. 2021).

6

In *Tipton*, the claimant was injured while working at an air conditioning manufacturing plant. *Id.* at 802. Tipton returned to work "when she was released by her treating physician to return to sedentary work activity with no overtime." *Id.* Her employer provided her a different job that was within her restrictions, but she earned "the same hourly rate of pay as she had before the injury." *Id.* Though Tipton previously assembled and tested air conditioning units, her post-injury position required her to assemble circuit boards. *Id.* Tipton's employer stopped paying TTD benefits when she returned to work. *Id.* Tipton argued she was entitled to TTD benefits until she reached MMI and was "released to return to her pre-injury job," which the ALJ denied. *Id.* The ALJ found that although Tipton did not reach MMI until after she returned to a job within her restrictions, "her release and return to 'customary, non-minimal work,'" justified termination of TTD benefits when she returned to work. *Id.*

This Court determined Tipton was released to perform her customary employment and had actually returned to employment. *Id.* She produced no "evidence that assembling circuit boards required significant additional training or that it was beyond her intellectual abilities." *Id.* Instead, the evidence showed Tipton "was certainly capable of and wanted to perform the circuit board assembly job because she bid on and was awarded the job after her release to full-duty work." *Id.* Thus, this Court determined substantial evidence supported the ALJ's denial of TTD benefits after she returned to work. *Id.*

7

In contrast, *Central Kentucky Steel v. Wise*, 19 S.W.3d 657 (Ky. 2000) provides an example of when an injured employee may be entitled to TTD benefits after being released to return to work with physical restrictions prior to reaching MMI. There, the injured employee was released "to return to work on July 11, 1997, with a left arm lifting restriction of five pounds," but he "did not return to work until September 30, 1997, and . . . reached MMI on October 28, 1997." *Id.* at 804; citing *Wise*, 19 S.W.3d at 659. This Court held "[i]t would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the type that is customary or that he was performing at the time of his injury." *Wise*, 19 S.W.3d at 659. Thus, this Court determined substantial evidence supported the ALJ's award of TDD "through the date Wise returned to work." *Id.* (citing *Wise*, 19 S.W.3d at 659).

Here, though The Job Center submitted medical opinions to the contrary, the ALJ adopted treating physician Dr. Harrod's treatment records, releasing Griffiths to work on light duty with restrictions on February 28, 2022, until reaching MMI on August 16, 2022. The ALJ found that, in this instance, Griffiths' refusal to accept The Job Center's light-duty offers did not preclude TTD benefits because the accommodated job offer was not for Griffiths' customary work under *Wise*. The ALJ also found that The Job Center's March 15, 2022, offer letter supported the award because it acknowledged Griffiths was unable to return to her customary work for The Job Center. In the letter, The Job Center explicitly acknowledges that Griffiths had not reached MMI,

had been released by her doctor for light-duty work, and could not return full-time to her former position at DHL.

In its order denying The Job Center's petition for reconsideration, the ALJ expounded on why the accommodated food pantry job offer did not amount to a release to "return to employment." The ALJ found that the position was not the type of work Griffiths performed for The Job Center, nor was it customary, given her prior experience as an exercise rider, photographer, and casino dealer. The ALJ further found the offered job was nothing more than minimal or make-work.

First, although Griffiths was released to work with light-duty restrictions, there is substantial evidence in the record to support the ALJ's finding that the offered job was not customary. The ALJ accurately summarized the conflicting evidence and stated the "evidentiary basis" to support his finding that Griffiths had not reached a level of improvement permitting her to return to employment. *Arnold v. Toyota Motor Mfg.*, 375 S.W.3d 56, 62 (Ky. 2012). The ALJ's summary of the evidence included (1) Griffiths' associate's degrees in business administration and criminal justice/paralegal studies; (2) her previous experience as a blackjack dealer, photographer, stall superintendent, and extensive work dealing with horses, including exercise riding; (3) ALJ Griffiths' job responsibilities at DHL; and (4) the food pantry job responsibilities. The ALJ weighed Griffiths' education and job experience against the food pantry job responsibilities and found the offered job was not the type of work she performed at DHL and was not customary based on her

9

prior experience. Thus, the ALJ acted within his authority to infer from the evidence that the food pantry job was not customary based on Griffiths' prior job experience.

Furthermore, the ALJ "perhaps implicitly, found that [the employee] reached MMI either at the same time or prior to the time she reached the level of improvement that would permit a return to her customary employment." *French v. Rev-A-Shelf*, 641 S.W.3d 172, 178 (Ky. 2022). Here, the ALJ found being released to perform minimal work does not constitute a release to "return to employment" under this Court's interpretation of KRS 342.0011(11)(a) because she was actively treated from March 2022 through August 2022. This finding implies that Griffiths reached MMI and reached a level that would permit her to return to her customary employment on the same date.

Second, Griffiths did not return to any type of work prior to reaching MMI. The Job Center argues that, because its offer would have allowed Griffiths to return to employment, though she chose not to, we should determine whether an actual return to employment means that an employee must choose to return to customary employment for TTD benefits to terminate. In an instance where an ALJ finds an employee has been released to return to customary employment, there may be differing interpretations of what constitutes a return to customary employment depending on whether an employee does not work or returns to a job that is not customary. However, because substantial evidence supports the ALJ's finding that Griffiths was not released to "return to employment" under the definition in *Tipton*, we do not

10

reach this analysis. Thus, the ALJ's award of TTD benefits until Griffiths reached MMI was supported by substantial evidence and was not clearly erroneous.

## CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals' opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert F. Ferreri
David A. Shearer, III
Ferreri Partners, PLLC


COUNSEL FOR APPELLEE,
AMY GRIFFITHS:

Daniel J. Urbon
Schulte Urbon Yonts, PLLC

COUNSEL FOR APPELLEE,
HON. THOMAS G. POLITES:

Pro se

COUNSEL FOR APPELLEE,
WORKERS' COMPENSATION
BOARD OF KENTUCKY:

Michael Wayne Alvey
Chairman